# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01222-COA

TREMAYNE WHITTLE A/K/A TREMAYNE LEMMIE WHITTLE A/K/A TREMAYNE L. WHITTLE                                                       APPELLANT

v.

STATE OF MISSISSIPPI                                                       APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/14/2014 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SEXUAL BATTERY AND SENTENCED TO THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION |
| DISPOSITION: | AFFIRMED - 12/15/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND JAMES, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     A Harrison County jury found Tremayne Whittle guilty of the sexual battery of Amy,[1]

---

[1] The names of the victim and the victim's relatives have been changed to protect the victim's identity.

who is the daughter of his former girlfriend Tami. The trial judge sentenced Whittle to thirty years in the custody of the Mississippi Department of Corrections (MDOC). Whittle now appeals, arguing the trial court erred by admitting inadmissible hearsay statements under the "tender-years exception" of Mississippi Rule of Evidence 803(25), and the verdict contradicts the overwhelming weight of the evidence. Finding no error, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2. In January 2013, Amy, a generally well-dispositioned eleven-year-old sixth grader, was having behavior problems in school, and her grades had been slipping over the preceding few months. Her mother, Tami, then found a letter in Amy's bedroom from her school indicating these problems. Tami went to the home of Amy's grandmother, Carla, where Amy had stayed the weekend, to confront Amy about her slipping grades and poor behavior. When Carla asked Amy why she was having problems, Amy started crying and eventually disclosed that Whittle, her mother's former boyfriend, had "forced [himself] on her." Carla then told Tami that Whittle had raped Amy.

¶3. Soon after, Carla, Tami, and Amy's stepfather took Amy to a local hospital, where she was treated by a registered nurse named Kathryn Culver, who is a sexual-assault nurse examiner. Amy's family was upset and, thus, asked to leave the examining room, so Culver could speak with Amy alone. Amy was also upset and crying. Once Amy started telling Culver what had happened, Amy "really broke down and really started crying." Culver testified that Amy told her Whittle had sexually abused her at some point between August

2

and October 2012 in her bedroom at her mother's house.[2] At that time, Whittle and Tami were in a relationship. Amy related that late one night, when she was in bed asleep, she heard her door "slam open" and then close. Whittle entered her bedroom and told Amy to pull down her pants. Then he jumped on top of her, put his hand over her mouth, and put "his P" in her "butt." Amy told Culver that it hurt. Later, when Amy went to the bathroom, there was "white stuff there." Whittle did not kiss, fondle, or touch her in any other way. Amy appeared relieved after telling Culver of this incident and stopped crying. Because the assault had not occurred within seventy-two hours of the hospital visit, Culver could not perform a sexual-assault kit. However, a urine pregnancy test and urinalysis were performed on Amy.

¶4.     Carolyn Prendergast, a criminal investigator with the Harrison County Sheriff's Office who is specially trained to interview children, conducted a videotaped forensic interview with Amy days after the hospital visit. Consequently, in June 2013, Whittle was indicted for sexual battery and touching of a child for lustful purposes. In August 2014, before trial, the State moved to allow Investigator Prendergast, Carla, and Tami to testify about what Amy had told them under the tender-years exception to the hearsay rule. The State had also requested that a videotaped copy of Investigator Prendergast's interview with Amy be admitted into evidence and played before the jury. Because Amy was eleven at the time she made the statements, the trial court found Amy was a child of tender years, and further, her

---

[2] The trial court allowed Culver's statements about what Amy told her as an exception to hearsay under Mississippi Rule of Evidence 803(4), because they were made for the purpose of medical treatment and Amy was providing medical history.

statements were reliable; thus, the video and the statements were admissible.

¶5.     At trial, Amy, then thirteen years old, took the stand. Her testimony about the assault matched what she told Investigator Prendergast during her videotaped forensic interview. She testified that Whittle came into her room one night and told her to pull her pants down. She refused. He then came over to her bed and covered her mouth with his hand. He pulled his pants down, took off her underwear, and "put his 'P' word in my butt." She stated it "hurt really bad." Whittle told her if she ever told anyone what he had done, he would "do it again." Once Whittle fell asleep, she went to the bathroom and saw "white liquid gooey stuff." She then took a bath and slept on the couch. When asked by the State to identify Whittle at trial, she refused to do so, or even make eye contact with him.

¶6.     Amy's grandmother and mother both testified at trial about Amy's change in behavior after the assault, the day Amy told them about the crime, and the hospital visit. Investigator Prendergast testified about her specialized training regarding interview techniques with children, and her interview with Amy about the assault. The videotaped interview was played for the jury. During the video, a visibly upset Amy stated the one-time assault occurred between August and October 2012. Amy responded immediately about the abuse scenario and identified her abuser by name, as she recounted the events of the attack.

¶7.     Whittle took the stand in his defense and maintained his innocence. He testified he and Amy's mother dated for approximately six months before they broke up. He is the father of two of Tami's other children. His relationship with Amy had been "cool," and he maintained she was lying about the incident. The defense had several other witnesses testify

as to Whittle's good character.

¶8. The jury considered Count 2's lustful-touching charge as a lesser-included offense of Court 1's sexual-battery charge. After the jury found Whittle guilty of sexual battery, the trial court sentenced him to serve thirty years in the custody of the MDOC. His motion for a new trial or, in the alternative, a judgment notwithstanding the verdict was denied. He timely appealed.

## ANALYSIS OF THE ISSUES

### I. Tender-Years Hearsay Exception

¶9. Whittle argues that the trial court erred in allowing hearsay testimony of the victim under Mississippi Rule of Evidence 803(25), or the tender-years exception. Amy's mother, her grandmother, and Investigator Prendergast were all allowed to testify about what Amy had told them regarding the assault. Rule 803(25) provides that in order for hearsay evidence to be admitted under this exception for "a statement made by a child of tender years describing any act of sexual contact performed with or on the child by another," the trial court must find, in a hearing conducted outside the presence of the jury, that the child who made the statement was of tender years, and that "the time, content and circumstances of the statement provided substantial indicia of reliability." M.R.E. 803(25). "[T]here is a rebuttable presumption that a child under the age of twelve is of tender years." *Withers v. State*, 907 So. 2d 342, 348 (¶14) (Miss. 2005). The relevant time to determine whether the exception applies is the age of the child when the statement was made, not when the testimony was given. *Id.* The comments to Rule 803(25) list several factors, often called the

5

*Wright* factors, that the trial court should use to determine whether the hearsay statements at issue have substantial indicia of reliability. *Id.* at 347 (¶14). They are:

> (1) whether there is an apparent motive on the declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

*Id.* at 347-48 (¶14) (quoting *Idaho v. Wright*, 497 U.S. 805, 822 (1990)). The central principle in these factors is whether the child was likely to be telling the truth when the statements were made. *Bell v. State*, 797 So. 2d 945, 948 (¶13) (Miss. 2001) (quoting *Wright*, 497 U.S. at 822). Since this issue involves an evidentiary question, the standard of review is abuse of discretion. *Withers*, 907 So. 2d at 345 (¶7).

¶10. Before trial, the court held a hearing outside of the presence of the jury and found the eleven-year-old victim was of tender years. Considering the evidence surrounding Amy's statements, the trial court determined her statements were reliable under the *Wright* factors, finding all of the factors weighed in favor of admissibility except factor four, which was of neutral weight. The judge found: (1) nothing indicated Amy had a reason to lie; (2) Amy appeared to be a "very bright young lady" who was responsive to questions, with no indication she would not tell the truth; (3) four people heard her statements – her grandmother, mother, Investigator Prendergast, and Culver; (4) it did not appear that "the statements were made spontaneously, but they were all made in close proximity in time; (5)

6

Amy made the statements within two months of the incident, and within a very short period of time; (6) Amy made the statements to her grandmother, a police officer, and a nurse; (7) Amy is bright, went into great detail about what happened, and did not hesitate to respond to questions; (8) the statements made to Investigator Prendergast were unquestionable as they were videotaped; (9) the nurse and grandmother were very credible witnesses; (10) Amy had knowledge and information that an eleven-year-old child should not know; (11) there was no indication suggestive techniques were used to elicit the statements; and (12) Amy is bright and articulate; the court was convinced nothing like this assault had ever happened to her before; and she had no motive to lie, knew what an oath was, and knew the difference between the truth and a lie.

¶11. Whittle claims that Amy's statements were not spontaneous, and she had a clear motive to fabricate the allegations against him, because her grandmother threatened to spank her due to her poor grades and bad behavior in school. We are not persuaded by his argument. The trial court found the lack of spontaneity in Amy's statements had neutral weight. We find the trial court's *Wright* analysis supported by substantial credible evidence. This issue is without merit.

## II. Weight of the Evidence

¶12. Whittle argues the jury verdict was against the weight of the overwhelming evidence. A motion for a new trial challenges the weight of the evidence. The standard of review for such a motion is abuse of discretion. *Dilworth v. State*, 909 So. 2d 731, 737 (¶20) (Miss. 2005). A new trial will be ordered only when "the verdict is so contrary to the overwhelming

weight of the evidence that to allow it to stand would sanction an unconscionable injustice."

*Withers*, 907 So. 2d at 352 (¶31) (quoting *Eakes v. State*, 665 So. 2d 852, 872 (Miss. 1995));

*Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005). The evidence will be considered in

the light most consistent with the verdict. *Withers*, 907 So. 2d at 352 (¶31) (citing *Jackson*

*v. State*, 580 So. 2d 1217, 1219 (Miss. 1991)). Further,

> [o]ur case law clearly holds that the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime.

*Collier v. State*, 711 So. 2d 458, 462 (¶15) (Miss. 1996) (citing *Christian v. State*, 456 So.

2d 729, 734 (Miss. 1984)). It is the jury's role to assess the weight and credibility of the

evidence and to resolve any conflicts in the evidence. *Latiker v. State*, 918 So. 2d 68, 73

(¶12) (Miss. 2005).

¶13. Whittle claims he is entitled to a new trial because Amy did not immediately report

the sexual assault until several months after it occurred, and her chronicle was

uncorroborated and suspect. We find no merit to this argument. Amy testified that she did

not immediately report the assault because Whittle threatened that if she told anyone, he

would "do it again." Amy's behavior and emotional state were entirely consistent with her

claim that she had been sexually assaulted. Even though Whittle testified he did not sexually

assault Amy, it was the jury's duty to determine the weight and credibility of his testimony

and resolve any conflicts. Based on the evidence presented at trial, allowing the verdict to

stand does not sanction an unconscionable injustice.

¶14.  **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**