# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01257-COA

JOSHUA DEMIEN MAGEE A/K/A JOSHUA MAGEE                    APPELLANT

v.

STATE OF MISSISSIPPI                    APPELLEE

DATE OF JUDGMENT:           07/25/2016
TRIAL JUDGE:                HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:  RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     MATTHEW ALLEN BALDRIDGE
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: JOSEPH SCOTT HEMLEBEN
DISTRICT ATTORNEY:          MICHAEL GUEST
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                AFFIRMED: 12/12/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Joshua Magee was convicted of two counts of sexual battery relating to his then seven-year-old cousin, Abby.[1] At the time of the offense, Magee was thirty-three years of age and living in the same household as the victim. The victim disclosed repeated acts of sexual abuse after she and Magee were caught together late at night without explanation. On appeal, Magee raises a number of evidentiary issues and challenges the weight and sufficiency of the evidence. We find that none of these contentions have merit, and we

_____

[1] We use a fictitious name to protect the identity of the minor victim.

affirm.

## DISCUSSION

### 1.    Magee's Prior Felony Conviction

¶2.    Magee testified in his own defense.  In his first issue on appeal, he complains that the trial court erred in permitting the State to impeach him with his prior felony conviction.  The court limited the impeachment to the fact that Magee was a previously convicted felon; it did not allow the State to elicit the specific offense (aggravated assault), though Magee himself volunteered from the stand that his prior criminal history was "not dealing with no sexual activities."

¶3.    From our review of the record, this issue clearly has been waived.  Magee initially moved in limine to exclude any reference to his prior convictions.  The trial court granted the motion, in part, except to the extent that the prior convictions might be used for impeachment if Magee testified.  A ruling on that aspect of the motion was deferred.  When the issue came up, after Magee declared his intent to testify in his own defense, the trial court began to hold a *Peterson*[2] hearing to determine whether the impeachment would be allowed.  But shortly after the hearing began, Magee's attorney interposed that he had no objection to the impeachment.  After the trial court offered the limitation, the attorney accepted it and reiterated that he had no objection.  "In order to preserve an issue for appeal, counsel must object.  The failure to object acts as a waiver." *Havard v. State*, 928 So. 2d 771, 791 (¶34)

---

[2] *See Peterson v. State*, 518 So. 2d 632 (Miss. 1987).

(Miss. 2006).

¶4.     This issue has been waived.

### 2.     Ineffective Assistance of Counsel

¶5.     Next, Magee contends that his trial attorney rendered constitutionally ineffective assistance of counsel by failing to request a limiting instruction regarding his prior conviction.

¶6.     To evaluate claims of ineffective assistance of counsel, we employ the two-part analysis outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   "First, the defendant must show that counsel's performance was deficient. . . .   Second, the defendant must show that the deficient performance prejudiced the defense." *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984) (quoting *Strickland*, 466 U.S. at 687).

¶7.     "Traditionally, trial counsel's decision regarding whether to request certain jury instructions is considered trial strategy." *Taylor v. State*, 109 So. 3d 589, 596 (¶27) (Miss. Ct. App. 2013).   The Mississippi Supreme Court has followed the United States Supreme Court's cautioning that:

> Judicial scrutiny of counsel's performance must be highly deferential.   It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.   A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Howard v. State*, 945 So. 2d 326, 354 (¶57) (Miss. 2006) (quoting *Strickland,* 466 U.S. at 689) (citations omitted). We therefore "presume that counsel's decision not to request a limiting instruction was within the ambit of trial strategy." *Curry v. State*, 202 So. 3d 294, 301 (¶24) (Miss. Ct. App. 2016).

¶8. There are good, strategic reasons counsel may choose not to request a limiting instruction. "[A] limiting instruction can actually focus the jury's attention on sensitive information," *Sipp v. State*, 936 So. 2d 326, 331 (¶9) (Miss. 2006), and "has the potential to do the defendant more harm than good." *Curry*, 202 So. 3d at 301 (¶24). Magee has not rebutted the presumption that counsel's inaction on this point was anything but sound trial strategy.

¶9. Nonetheless, counsel's intentions cannot be "fully apparent from the record," and this issue is best left to a potential motion for post-conviction relief. *See* M.R.A.P. 22(b). We deny relief on this issue without prejudice to a potential motion for post-conviction relief.

### 3. Tender Years Exception

¶10. Next, Magee contends that the trial court erred in admitting hearsay statements of the victim under Mississippi Rule of Evidence 803(25), the tender years exception. It provides:

> **(25) Tender Years Exception.** A statement by a child of tender years describing any act of sexual contact with or by another is admissible if: (A) the court – after a hearing outside the jury's presence – determines that the statement's time, content, and circumstances provide substantial indicia of reliability; and (B) the child either: (i) testifies; or (ii) is unavailable as a witness, and other evidence corroborates the act.

The reliability of the proffered hearsay testimony is evaluated according to the *Wright*

factors, which are:

> (1) whether there is an apparent motive on the declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

*Withers v. State*, 907 So. 2d 342, 347-48 (¶14) (Miss. 2005) (quoting *Idaho v. Wright*, 497 U.S. 805, 822 (1990)).

¶11.    The court in this case held an extensive hearing on the admissibility of the hearsay statements and rendered from the bench a lengthy, detailed, and thoughtful opinion expressly addressing each of the *Wright* factors. The ruling occupies nearly fifteen pages in the transcript, and, suffice to say, adequately addressed every relevant factor. Magee's complaints, on the other hand, are supported only by cursory argument and concern questions of fact and credibility that were thoroughly addressed by the trial court. Specifically, Magee disagrees with the trial court regarding the degree of spontaneity of the victim's statements (the court found that two of the three statements were not spontaneous but were not the product of suggestive questioning), and Magee claims that the victim was inconsistent in her statements. On the latter point, the judge found that the victim was relating different incidents when speaking to different people, rather than being inconsistent per se. The court made extensive and detailed findings:

5

And during the interview with [the Child Advocacy Center], [Abby] didn't talk about [the incidents she described to the other two witnesses]. She talked about the Defendant performing oral sex on her and basically did not disclose the same thing that she had disclosed to Ms. Martin and Mr. Davis, Mr. Milton Davis.

Now while that may seem to be inconsistent [–] and actually certainly is inconsistent [–] it doesn't seem surprising to me that a child of that age at different times is going to remember some things and put relative importance on some things. I think that[,] in watching the interview[, the interviewer] was obviously aware of the allegations that – of the disclosure [Abby] had made to Martin [and] Davis [and] attempted . . . to direct [Abby's] attention back to that, but she certainly didn't go so far as to say, "Now, didn't you tell your grandmother and Mr. Davis that he put his thing in your mouth?" She didn't do that and the child didn't go forward and volunteer anything further than she had already said.

To me that is consistent with a child under the age of seven or seven or eight years old making a report of these things happening[ but] doesn't really want to talk about it and is going to relate different things at different times [–] with more than one thing happening.

Otherwise, Magee just disagrees with the weighing of the various factors and the necessity and fairness of the tender years exception, but he does not develop the latter point into a separate issue.

¶12. This Court reviews evidentiary rulings for an abuse of discretion, which may be found only if the decision is not supported by substantial credible evidence or where "the reviewing court has a definite and firm conviction that the court below committed a clear error of judgment and [in the] conclusion it reached upon a weighing of the relevant factors." *Withers*, 907 So. 2d at 345 (¶7) (citation and quotations omitted).

¶13. Magee's complaints are entirely directed to the trial court's findings regarding

6

credibility and its weighing of the various factors under consideration – issues that were entrusted to the trial court's discretion and were thoroughly and soundly addressed by that court. As we can find no abuse of that discretion, this issue is without merit.

### 4. Sufficiency of the Evidence

¶14. When reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (abrogated on other grounds). Where the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is to reverse and render. *Id*. However, if "reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Id*.

¶15. Magee presents two challenges to the sufficiency of the evidence supporting his convictions. The first is a specific attack on the sufficiency of the evidence supporting his sexual battery conviction on Count II, and the second is a more general attack on the credibility of the victim.

¶16. Count II alleged that Magee "performed cunnilingus" on the victim. On appeal, he contends that the victim's testimony at trial – that he had "touched" her "vagina" with his

"mouth," was insufficient to support the conviction. Magee contends that this failed to meet the State's burden to prove penetration. Mississippi Code Annotated section 97-3-97(a) (Rev. 2014) defines sexual penetration as including in relevant part "cunnilingus" and "any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body."

¶17. While we think the victim's testimony that Magee "touched" her "vagina" with his "mouth," taken in the context of her other testimony unambiguously describing sexual abuse, was adequate, there is other evidence in the record supporting the conviction on this count. The child's hearsay statements were admitted into evidence under the tender years exception to the rule against hearsay and were, therefore, competent substantive evidence. *See* M.R.E. 803(25); *Veal v. State*, 585 So. 2d 693, 697 (Miss. 1991). During the interview, the victim stated that Magee had "sucked" on her "middle," which she had identified as her genital area. This unambiguously proved penetration. "[P]roof of contact, skin to skin, between a person's mouth, lips, or tongue and the genital opening of a woman's body, whether by kissing, licking, or sucking, is sufficient proof of sexual penetration through the act of cunnilingus within the purview of [section] 97-3-97(a)." *Bateman v. State*, 125 So. 3d 616, 623 (¶19) (Miss. 2013) (citation and internal quotation marks omitted).

¶18. The evidence was clearly sufficient to support the conviction under Count II.

¶19. Magee's other challenge to the sufficiency of the evidence is almost entirely an attack on the credibility of the victim; he contends that she was not credible based on alleged

contradictions and inconsistencies in her testimony and the various hearsay statements that were admitted into evidence. These contentions largely track those made in the prior issue contesting the reliability of the hearsay statements. But it is the jury, not the reviewing court, that is the arbiter of witness credibility. *See Hartfield v. State*, 161 So. 3d 125, 140 (¶23) (Miss. 2015). Our review on appeal is limited to whether any rational trier of fact could have found Magee guilty. *See Bush*, 895 So. 2d at 843 (¶16). We cannot find the verdict here unsupported by sufficient evidence.

### 5. Weight of the Evidence

¶20. Finally, Magee contends that his convictions were against the overwhelming weight of the evidence. A new trial based on the weight of the evidence should be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." *Bush*, 895 So. 2d at 844 (¶18) (citation omitted). "[T]he evidence must be viewed in the light most favorable to the verdict[.]" *Jenkins v. State*, 131 So. 3d 544, 551 (¶23) (Miss. 2013). And the motion for a new trial is entrusted to the circuit judge, who had a firsthand view of the trial. "[R]eversal is warranted only if the trial court abused its discretion in denying [the] motion for a new trial." *Waits v. State*, 119 So. 3d 1024, 1028 (¶13) (Miss. 2013).

¶21. Magee does not actually brief this issue separately; his reasons for urging that the verdict was against the overwhelming weight of the evidence are the same ones as in his arguments concerning the sufficiency of the evidence – they are almost entirely an attack on the credibility of the witnesses. As we explained in the previous issue, the jury, not the

9

reviewing court, is the judge of the credibility of witnesses. *Hartfield,* 161 So. 3d at 140 (¶23). "It is the jury's role to assess the weight and credibility of the evidence and to resolve any conflicts in the evidence." *Whittle v. State*, 182 So. 3d 1285, 1289 (¶12) (Miss. Ct. App. 2015) (citing *Latiker v. State*, 918 So. 2d 68, 73 (¶12) (Miss. 2005)). This Court can "only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18).

¶22. That is not the case here. From our own review of the record, the victim's testimony was direct, unequivocal, and sufficiently detailed in describing the abuse that had occurred. She was generally consistent in her prior statements and had no apparent motive to lie. Her account was corroborated by her being discovered entering the house late at night with Magee, an incident Magee himself admitted occurred (though in his telling it was under different circumstances). From this record, we cannot find Magee's convictions to be "so contrary to the overwhelming weight of the evidence that to allow [them] to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). This issue is without merit.

¶23. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**