# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00414-COA

**WELFORD LEE MCCARTY A/K/A LEVI MCCARTY A/K/A PORK CHOP**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

DATE OF JUDGMENT: 02/17/2017
TRIAL JUDGE: HON. DALE HARKEY
COURT FROM WHICH APPEALED: GREENE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER
BY: PHILLIP BROADHEAD
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: JEFFREY A. KLINGFUSS
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 06/12/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, P.J., WILSON AND GREENLEE, JJ.

### WILSON, J., FOR THE COURT:

¶1. Following a jury trial in the Greene County Circuit Court, Welford Lee McCarty was convicted of capital murder and desecration of a human corpse. The circuit court sentenced him to life imprisonment without the possibility of parole for capital murder and three years' imprisonment on the latter offense. On appeal, McCarty alleges that the trial judge abused his discretion by admitting photographs of the victim's dismembered and decomposed corpse and bones. He also alleges that the State's use of the photos "was part of a larger pattern of prosecutorial misconduct." McCarty's claims are without merit. Therefore, his convictions and sentences are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2.    McCarty manufactured methamphetamine on his property in rural Greene County. In early 2013, McCarty learned that his friend Donovan Cowart was working with law enforcement as a confidential informant. McCarty told Cowart that he wanted to show him a hole that he had dug on his property for use in his meth operation. McCarty, along with Robert Stevens and David Allen, picked up Cowart and drove to the hole. As Cowart was walking over to look at the hole, McCarty retrieved a shotgun from the trunk of his car and shot Cowart in the back of the head. Cowart fell into the hole, and McCarty shot him again. McCarty and Stevens then took Cowart's cell phone, searched his wallet for money, and buried the body in the hole.

¶3.    A few weeks later, McCarty became concerned that the police would search his property, so he insisted that Stevens help him move the body to another location. After the two men dug up the body, McCarty said that they had to dismember it. McCarty retrieved an ax, and Stevens used the ax to sever the head, arms, and legs below the knees and cut the torso in half. The two men stuffed the body parts into trash bags and then tied up the bags and cinder blocks inside a large tarp. They threw the tarp into a nearby pond, but it would not sink. McCarty fired his shotgun into the tarp, but it still would not sink, so Stevens wedged it under a tree in a culvert.

¶4.    In May 2015, law enforcement found the tarp with the dismembered and decomposed body in the culvert. One of Cowart's shoes was also in the tarp. The ax used to dismember

the body, which Stevens identified at trial, was found about forty feet away in the pond. The FBI subsequently dug up the original burial site on McCarty's property. There, the FBI found Cowart's other shoe, his wallet, a baseball cap with a large hole in the back, and several teeth, which DNA tests later confirmed were Cowart's teeth.

¶5.     In September 2015, a Greene County grand jury indicted McCarty and Stevens for capital murder, with the underlying felony of robbery, and desecration of a human corpse. The court appointed the State Office of Capital Defense Counsel to represent McCarty, and McCarty's case proceeded to a jury trial in February 2017. Stevens and Allen testified against McCarty at trial consistent with the facts discussed above. Stevens testified that in exchange for his testimony the State had agreed to allow him to plead guilty to second-degree murder with a sentencing recommendation of twenty to thirty years. Allen was not charged in connection with Cowart's murder. He testified that he did not know in advance that McCarty planned to kill Cowart, and he did not help McCarty and Stevens conceal the body afterward. Allen testified that McCarty threatened to kill him and his family if he ever told anyone about the murder. At the time of McCarty's trial, Allen was under indictment for an unrelated armed robbery; however, the State had not offered him any plea bargain or leniency on that charge in exchange for his testimony.[1]

¶6.     In addition, Alicia Keel, a friend of McCarty, testified that McCarty confessed to the

---

[1] On redirect, Allen also testified that he had testified against McCarty before the grand jury before the alleged armed robbery occurred.

murder.  According to Keel, McCarty admitted that he killed Cowart on his property and buried the body there; she also testified that on a later date, McCarty told her that he planned to move the body and sink it in a pond.

¶7.    The jury returned a verdict finding McCarty guilty of capital murder, with the underlying felony of robbery, and desecration of a human corpse.  The court sentenced McCarty to life imprisonment without the possibility of parole for capital murder and three years' imprisonment for desecration of a human corpse.  McCarty filed a motion for a new trial, which was denied, and a notice of appeal.  On appeal, McCarty raises the two issues noted above.[2]  We find no error and affirm.

## ANALYSIS

### I.    Photographs

¶8.    McCarty argues that the trial judge abused his discretion by admitting into evidence nineteen photographs.  Six of these photos show parts of the decomposed and dismembered corpse as it was found in the tarp.  The other thirteen photos show the victim's dry bones as they were examined during the autopsy performed by Dr. Mark LeVaughn, Chief Medical Examiner for the State of Mississippi.  McCarty argues that these photos were unfairly prejudicial and should have been excluded under Mississippi Rule of Evidence 403.

---

[2] Phillip W. Broadhead, clinical professor and director of the University of Mississippi School of Law Criminal Appeals Clinic, was appointed as McCarty's appellate counsel. Third-year law students under Professor Broadhead's supervision were appointed as special counsel pursuant to the Mississippi Law Student Limited Practice Rule.

However, we find no abuse of discretion in the trial judge's rulings.

¶9.     "On appeal, this Court will give great deference to trial judges in the sound exercise of their discretion in the admission of photographs.  Though this discretion is not unlimited, it is considerable, and we will reverse a trial judge's decision to admit a photograph only if he abused that discretion."  *Hutto v. State*, 227 So. 3d 963, 982 (¶55) (Miss. 2017) (citations, internal quotation marks, and brackets omitted), *cert. denied*, 138 S. Ct. 983 (2018).  The Supreme Court has held that "photographs of a victim have evidentiary value when they aid in describing the circumstances of the killing, describe the location of the body and cause of death, or supplement or clarify witness testimony."  *Id.* (citations omitted) (quoting *Keller v. State*, 138 So. 3d 817, 857 (¶101) (Miss. 2014)).  "Reversal based on the admission of cumulative and/or gruesome photographs is rare."  *Cowart v. State*, 178 So. 3d 651, 663 (¶31) (Miss. 2015).

¶10.    Here, at least one legitimate evidentiary purpose of the photos is obvious: the State had to meet its burden of proving, beyond a reasonable doubt, that McCarty was guilty of the crime of desecration of a human corpse.  "[T]he familiar, standard rule [is] that the prosecution is entitled to prove its case by evidence of its own choice . . . ."  *Old Chief v. United States*, 519 U.S. 172, 186 (1997).  Here, the prosecution understandably sought to establish the desecration of a human corpse by showing the desecrated human corpse.  In addition, Dr. LeVaughn used the photos to explain the path of the fatal gunshot wound to Cowart's head and the manner of the dismemberment.  The photos also corroborated the

5

details of Stevens's testimony, which was central to the State's case against McCarty.

¶11.    Because the photos were relevant, they were admissible under Mississippi Rules of Evidence 401 and 402. Relevant evidence should be excluded under Rule 403 only "if its probative value is *substantially outweighed* by a danger of," inter alia, "unfair prejudice." M.R.E. 403 (emphasis added). "Rule 403's scope is narrow, as it is an extraordinary measure that should be used very sparingly." *Curry v. State*, 202 So. 3d 294, 298 (¶13) (Miss. Ct. App. 2016) (internal quotation marks omitted). The decision whether to exclude evidence under Rule 403 "is committed to the broad discretion of the trial judge, and our standard of review is highly deferential." *Id.* at 298-99 (¶13).

¶12.    The photos at issue in this case were not unfairly prejudicial. They are unlike the photo that led to the rare reversal in *Bonds v. State*, 138 So. 3d 914 (Miss. 2014)—"a full-color, close-up, frontal photograph of [the victim's] maggot-infested skull and facial area," *id.* at 918 (¶10), which the Supreme Court found to be "gruesome in the extreme," *id.* at 920 (¶15).[3] There were no maggots in the photos in this case, and the dismembered corpse was in such an advanced state of decomposition that it is not even obvious what most of the photos of the corpse depict without the benefit of Dr. LeVaughn's testimony. The remaining photos show only dry bones, not blood, flesh, or gore. The photos are not "gruesome in the extreme," they were introduced for legitimate evidentiary purposes, and the prosecution did

_____

[3] *Bonds* followed *McNeal v. State*, 551 So. 2d 151 (Miss. 1989), which similarly reversed and remanded for a new trial based on the admission of a "full-color, close-up view of the [victim's] decomposed, maggot-infested skull." *Id.* at 159.

not make excessive or prolonged use of them at trial. The trial judge considered the photos and found that they were probative and would not be prejudicial. On the facts of this case, we cannot say that the danger of unfair prejudice, if any, "substantially outweighed" the photos' probative value. M.R.E. 403. Nor can we say that the trial judge abused his discretion by admitting the photos.

¶13. On appeal, McCarty relies heavily on *Bonds*'s "two-part test" for the admission of photos of a crime victim: "First, the trial court must determine whether the proof is absolute or in doubt as to identity of the guilty party. Secondly, it must be determined whether the photographs are necessary evidence or simply a ploy by the prosecutor to arouse the passion and prejudice of the jury." *Bonds*, 136 So. 3d at 918 (¶8) (quoting *Manix v. State*, 895 So. 2d 167, 178 (¶33) (Miss. 2005)). McCarty now contends that the photos should have been excluded because the proof was "absolute" and there was no "doubt as to the identity of the guilty party"—i.e., McCarty. However, this argument directly conflicts with the position that McCarty took at trial. McCarty's able trial counsel absolutely contested the "identity of the guilty party," arguing forcefully that the State had failed to prove beyond a reasonable doubt that McCarty killed Cowart.[4] Moreover, for the reasons discussed above, the photos were offered for legitimate evidentiary purposes, not as a "ploy by the prosecutor to arouse the

---

[4] We note that there was no evidence or argument that McCarty killed Cowart by accident or in self-defense, and the jury was not instructed on any lesser offenses. Accordingly, if there really was no "doubt as to the identity of the guilty party," then McCarty could not possibly have been prejudiced by the admission of the photographs.

7

passion and prejudice of the jury." Accordingly, the trial judge's discretionary ruling to admit the photos did not run afoul of *Bonds*'s holding.

## II. Alleged Prosecutorial Misconduct

¶14. In his second issue on appeal, McCarty argues that he "suffered the injustice of a fundamentally unfair trial . . . due to multiple incidents of . . . prosecutorial misconduct," including but not limited to the prosecution's use of the photos discussed above. The litany of issues that McCarty raises under this heading do not warrant the very serious charge of "prosecutorial misconduct." Nor do any of these issues warrant a new trial.

¶15. First, McCarty argues that "[t]he prosecution needlessly presented cumulative evidence in violation of [Mississippi Rule of Evidence] 403." This assertion relates in part to the photos of the corpse and bones; however, as discussed above, those photos were admissible and legitimate evidence. Aside from those photos, McCarty simply argues that the State called more witnesses and introduced more exhibits than were necessary to prove the State's case. McCarty cites no objections that he made to any of this other evidence, nor does he explain how any of it was unfairly prejudicial. The district attorney and assistant district attorney simply met their constitutional obligation to prove guilt beyond a reasonable doubt. That is their job, not "prosecutorial misconduct."

¶16. Second, McCarty argues that "[t]he prosecution violated [his] constitutional right to a fundamentally fair trial by calling or attempting to call clearly biased witnesses whose testimony was not necessary to prove [the] case." McCarty first cites the State's pretrial

motion to call his wife as a witness. However, the trial judge excluded her testimony, and there was no mention of the issue in the presence of the jury. The State handled this legal issue appropriately and ethically, and McCarty cannot possibly show that he was prejudiced in any way. McCarty also criticizes the State's use of Stevens's testimony pursuant to a plea bargain, which McCarty calls a "deal with the devil." However, the jury was made aware of the plea agreement, which required Stevens to testify truthfully. Offering testimony based on a plea bargain is not "prosecutorial misconduct" either—not even close.

¶17. Third, McCarty argues that "[t]he prosecution repeatedly and needlessly attempted to introduce evidence of gang affiliation and a conspiracy in an attempt to unfairly bias the jury against [him]." McCarty cites two instances in which the State sought to introduce evidence of gang affiliation or a conspiracy on the theory that McCarty's gang had ordered Cowart's murder. The prosecution, again, handled these issues appropriately and ethically in a pretrial motion and, later, outside the presence of the jury. McCarty admits that "the State was ultimately unsuccessful," as the trial judge excluded the evidence after finding that there was insufficient corroboration. McCarty shows no prejudice, since the jury was never informed of any gang affiliation, and it is clear that the State proceeded in good faith. Again, this was not "prosecutorial misconduct."

¶18. Fourth, McCarty argues that "[t]he prosecution violated [his] constitutional right to a fundamentally fair trial by overtly, repeatedly, and excessively soliciting sympathy from the jury for [two witnesses, Cowart's sister and the mother of Cowart's children]." In

9

support of this allegation, McCarty cites only three brief comments from the State's opening and closing statements and a few lines of unexceptional testimony from witnesses who were understandably upset by Cowart's murder. McCarty's very capable trial counsel did not object to any of the cited argument or testimony—and for good reason. There was nothing improper or out-of-bounds about the argument or testimony. It certainly does not raise any issue of "prosecutorial misconduct."

¶19. Fifth, McCarty asserts that "[i]n closing argument, the prosecution attempted to unfairly [place] a 'burden' to convict [him] on the jury and also made a 'send the message' argument to the jury." On its face, this particular argument raises a serious issue. Our Supreme Court has "repeatedly condemned the 'send a message' argument and warned prosecutors accordingly." *Payton v. State*, 785 So. 2d 267, 270 (¶11) (Miss. 1999). "A 'send the message' argument is one that encourages 'juries to use their verdict to 'send-a-message' to the public or to other potential criminals,' instead of 'render[ing] a verdict based solely on the evidence introduced at the trial of that case.'" *Terrell v. State*, 237 So. 3d 717, 734 (¶67) (Miss. 2018) (quoting *Brown v. State*, 986 So. 2d 270, 275 (¶11) (Miss. 2008)).

¶20. However, the record does not support McCarty's claim. In the cited portion of the transcript, the district attorney simply concluded his argument as follows:

> The burden of this case is now y'alls. For four years the community has waited to hear what happened. That family has waited. It's time. The burden is y'alls. I ask you to do what you told us you would do. Look at the evidence. Listen to the testimony. You told us, you agreed with when I said evidence is oral and physical and we've given you both. We told the story of what happened to Donovan Cowart. I ask you to find [McCarty] guilty of capital

10

murder and guilty of desecration of a corpse. Thank you.

The district attorney did not ask the jurors to "send a message" to anyone. Rather, he reinforced their obligation to render a verdict based on the evidence presented. McCarty's able trial counsel did not object to these comments, and there was nothing improper about the argument.

¶21. In summary, McCarty's "prosecutorial misconduct" argument fails to identify any instance of misconduct or reversible error. The argument should not have been phrased in terms of "prosecutorial misconduct" because the prosecutors in this case did absolutely nothing to warrant such an accusation.

## CONCLUSION

¶22. McCarty received a fair trial, there is substantial evidence to support the jury's guilty verdict, and the issues raised on appeal are without merit. Accordingly, McCarty's convictions and sentences are affirmed.

¶23. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**

11