# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00516-COA

**ANTRONE COLEMAN A/K/A ANTRON COLEMAN**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2017 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/21/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE J. WILSON, P.J., McDONALD AND McCARTY, JJ.

### J. WILSON, P.J., FOR THE COURT:

¶1. Following a jury trial, Antrone Coleman was convicted of first-degree murder and shooting into an occupied dwelling. The circuit court sentenced him to serve concurrent terms of life imprisonment and ten years in the custody of the Department of Corrections. On appeal, Coleman argues that the State made an improper "golden rule" or "send a message" closing argument and impermissibly commented on his exercise of his Fifth Amendment right to remain silent. However, we find no error and affirm.

### FACTS AND PROCEDURAL HISTORY

¶2. On Thanksgiving Day 2014, Shaggery Jones and three others drove up to the home of Shenique Gaddis on Garfield Circle in Jackson. Antrone Coleman was standing outside a house on the opposite side of the street "talking noise" and threatening to "shoot up" Gaddis's home. Jones's three friends made it inside Gaddis's home before Coleman opened fire, but Coleman shot Jones in the neck; Jones later died from his injuries. Coleman also fired additional shots into Gaddis's home.

¶3. At trial, Coleman testified that Jones brandished a gun and that he shot at Jones in self-defense. However, other witnesses testified that Jones did not have a gun, and no gun was found on Jones. The physical evidence also contradicted Coleman's story. Eight nine-millimeter spent shell casings were found in the vicinity of where Coleman was standing when he fired at Jones, and three nine-millimeter projectiles were found near where Jones was shot. In contrast, no shell casings were found near Jones, and no projectiles were found near where Coleman was standing. In addition, shots were fired into Gaddis's home, while no shots were fired into the home behind Coleman.

¶4. Coleman fled after he shot Jones. He turned himself in the next day after learning that police had identified him as the shooter. He arrived at the police station with an attorney and was arrested and charged with murder and shooting into an occupied dwelling. Coleman signed an acknowledgment of his rights, but he did not make a statement to police.

¶5. The jury found Coleman guilty of first-degree murder and shooting into a dwelling, and the circuit court sentenced him to concurrent terms of life imprisonment and ten years in the custody of the Department of Corrections. Coleman filed a motion for judgment

notwithstanding the verdict or a new trial, which was denied, and a notice of appeal.

## ANALYSIS

¶6. As noted above, Coleman argues that the State made an improper "golden rule" or "send a message" closing argument and impermissibly commented on his exercise of his right to remain silent.

### I. The State's Closing Argument

¶7. Coleman argues that the following portion of the State's closing argument was improper and requires a new trial:

> We had one person that was the victim of a violent crime. We're hoping that she can get some justice today. We've got people in here that work in businesses that are located in Jackson that have to worry about invasions from drug addicts because of the business they're in. We have people that are here today that have to evaluate people based on who they are, are you a thief, before they can engage in the business in their livelihood.

Defense counsel objected to this line of argument, and the court instructed the prosecutor to "rein it in a little." The prosecutor then moved on from the argument. After the jury retired to deliberate, Coleman moved for a mistrial based on this argument, but the trial judge denied his motion.

¶8. "Attorneys on both sides are generally afforded broad latitude during closing arguments." *Moffet v. State*, 156 So. 3d 835, 857 (¶61) (Miss. 2014). "So long as counsel in his address to the jury keeps fairly within the evidence and the issues involved, wide latitude of discussion is allowed . . . ." *Brewer v. State*, 704 So. 2d 70, 72 (¶16) (Miss. 1997) (quoting *Clemons v. State*, 320 So. 2d 368, 371-72 (Miss. 1975)). "[T]he trial judge should intervene to prevent unfair argument" only when counsel "departs entirely from the

3

evidence[,] . . . makes statements intended solely to excite the passions or prejudices of the jury, or makes inflammatory and damaging statements of fact not found in the evidence." *Id.* (quoting *Clemons*, 320 So. 2d at 372). "The standard of review that appellate courts must apply to lawyer misconduct during . . . closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Moffet*, 156 So. 3d at 857 (¶60) (quoting *Sheppard v. State*, 777 So. 2d 659, 661 (¶7) (Miss. 2000)). In addition, "[t]his Court reviews the propriety of closing arguments giving deference to the trial court's ruling, because the trial court is in the best position to determine if an alleged improper comment had a prejudicial effect; therefore, absent an abuse of that discretion, the trial court's ruling will stand." *Jones v. State*, 962 So. 2d 1263, 1275 (¶45) (Miss. 2007).

¶9. Coleman first argues that the prosecutor made an improper "golden rule" argument. "'Golden rule' arguments, which ask the jury to put themselves in the place of one of the parties, are prohibited." *Batiste v. State*, 121 So. 3d 808, 863 (¶145) (Miss. 2013) (quoting *Chisolm v. State*, 529 So. 2d 635, 639 (Miss. 1988)). Our Supreme Court has explained,

> It is the essence of our system of courts and laws that every party is entitled to a fair and impartial jury. It is a fundamental tenet of our system that a man may not judge his own case, for experience teaches that men are usually not impartial and fair when self interest is involved. Therefore, it is improper to permit an attorney to tell the jury to put themselves in the shoes of one of the parties or to apply the golden rule. Attorneys should not tell a jury, in effect, that the law authorizes it to depart from neutrality and to make its determination from the point of view of bias or personal interest.

*Id.* at 863-64 (¶145) (quoting *Chisolm*, 529 So. 2d at 640).

¶10. Here, the prosecutor's comments did not reach the level of a "golden rule" argument.

4

The prosecutor did not ask the jurors to put themselves in the shoes of the victims. Perhaps she was building up to such an argument, but Coleman objected, the trial judge instructed her to "rein it in a little," and she did as instructed by moving on to another line of argument. We cannot say that the "natural and probable effect" of the prosecutor's comments would be "to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Moffet*, 156 So. 3d at 857 (¶60). Therefore, we also cannot say that the trial judge abused his discretion in his handling of the objection or by denying Coleman's subsequent motion for a mistrial. *Jones*, 962 So. 2d at 1275 (¶45).

¶11. Coleman also argues that the same comments were an improper "send a message" argument. "Our [S]upreme [C]ourt has repeatedly condemned the 'send a message' argument and warned prosecutors accordingly." *Miskell v. State*, 270 So. 3d 23, 35 (¶43) (Miss. Ct. App. 2018) (quoting *Bryant v. State*, 232 So. 3d 174, 183 (¶24) (Miss. Ct. App. 2017)), *cert. denied*, 260 So. 3d 799 (Miss. 2019). "A 'send the message' argument is one that encourages juries to use their verdict to send-a-message to the public or to other potential criminals, instead of rendering a verdict based solely on the evidence introduced at the trial of that case." *McCarty v. State*, 262 So. 3d 553, 559 (¶19) (Miss. Ct. App. 2018) (internal quotation marks omitted) (quoting *Terrell v. State*, 237 So. 3d 717, 734 (¶67) (Miss. 2018)), *cert. denied*, 260 So. 3d 798 (Miss. 2019).

¶12. We also disagree that the prosecutor made a "send a message" argument. Again, she may have been headed in that direction, but Coleman objected, the judge cautioned her, and she moved on to another point. As stated above, we find no abuse of discretion in the trial

5

judge's handling of the objection or denial of Coleman's motion for a mistrial.

## II. Alleged Comments on Coleman's Right to Remain Silent

¶13.    Coleman next argues that the State improperly commented on his right to remain silent pursuant to the Fifth Amendment to the U.S. Constitution. Specifically, Coleman objects to comments during closing argument regarding his decision to flee the scene rather than wait for the police to arrive. The State argued:

> Who acts in self-defense and leaves before the police gets there and then doesn't turn themselves in until they see themselves on TV? Ladies and gentlemen, that is not the way it's done. If a person - - put yourself in the position of Antrone Coleman. If he really believed he was acting in self-defense, he would have waited for the police, and he would have explained to the police why he shot Shaggery Jones.

¶14.    We hold that this argument was not an improper comment on Coleman's right to remain silent. The U.S. Supreme Court rejected the same basic argument in *Jenkins v. Anderson*, 447 U.S. 231 (1980). Jenkins was charged with murder but testified at trial that he acted in self-defense after the victim attacked him with a knife. *Id.* at 232-33. The prosecutor cross-examined Jenkins about the fact that he fled the scene and did not turn himself in until two weeks later. *Id.* And in closing argument, the prosecutor "again referred to [Jenkins's] prearrest silence," noting that Jenkins had "waited two weeks" before he turned himself in or reported the stabbing to anyone. *Id.* at 234. Jenkins argued that the prosecutor violated his Fifth Amendment right to remain silent "by suggesting that [Jenkins] would have spoken out if he had killed in self-defense." *Id.* at 235. The U.S. Supreme Court rejected this argument, holding that Jenkins's decision to testify and claim self-defense opened him up to impeachment based on his prearrest silence. *Id.* at 235-38. The Court distinguished

6

prearrest silence from post-*Miranda* silence, explaining that a *Miranda* warning implicitly assures the defendant that his post-*Miranda* silence will not be used against him. *Id.* at 239-40. In contrast, "no governmental action induced [Jenkins] to remain silent before arrest." *Id.* at 240.

¶15. Our Supreme Court followed *Jenkins* in *Cooley v. State*, 391 So. 2d 614 (Miss. 1980). Cooley was charged with murder but testified at trial that the shooting was an accident. *Id.* at 615, 618. On cross-examination, the district attorney questioned Cooley about his failure to tell officers that the shooting was an accident when he turned himself in an hour or two later. *Id.* at 618, 621. Our Supreme Court held that the district attorney's questions were proper given Cooley's decision to testify and claim of accident. *Id.* at 622. In addition, when the Court denied Cooley's motion for rehearing, it supplemented its opinion to address the U.S. Supreme Court's then-recent decision in *Jenkins*, *supra*. *Cooley*, 391 So. 2d at 625. Our Supreme Court observed that *Jenkins* dealt "with a similar contention," quoted *Jenkins* at length, and then concluded by stating that its decision in *Cooley* was "clearly in accord with" *Jenkins*. *Cooley*, 391 So. 2d at 625-27.

¶16. The State's closing argument in this case was consistent with *Jenkins* and *Cooley*. Once Coleman decided to testify to a claim of self-defense, the State was entitled to argue that Coleman's decision to flee the crime scene was inconsistent with self-defense. The State permissibly commented on Coleman's prearrest flight, not his post-*Miranda* silence.

## CONCLUSION

7

¶17. There was no error in the State's closing argument.[1] Therefore, Coleman's

convictions and sentences are **AFFIRMED**.

      **BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**

---

[1] Coleman also argues that he is entitled to a new trial because of the "cumulative effect" of the State's two allegedly improper arguments. However, because neither of the State's arguments was improper, the cumulative error doctrine is inapplicable. *See, e.g.*, *Rogers v. State*, 205 So. 3d 660, 664-65 (¶17) (Miss. Ct. App. 2015).