MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. A jury in the Webster County Circuit Court found James D. Fulgham guilty of sexual battery and touching a child for lustful purposes. On appeal, Fulgham claims the circuit judge erred in (1) failing to provide sua sponte a limiting instruction when admitting a transcript of a recorded conversation and (2) limiting his defense by cutting short his cross-examination of the victim’s mother. We find no reversible error in admitting the transcript since Fulgham neither requested a limiting instruction nor points to any prejudicial inaccuracies in the transcript. Further, because Fulgham neglected to make a proffer of the testimony he sought to elicit from the victim’s mother, this issue was not preserved for appellate review. Therefore, we affirm.
 

 FACTS
 

 ¶2. C.W.
 
 [1]
 
 was fourteen years old in December 2009 when he spent several nights at his grandmother’s
 
 [2]
 
 Webster County residence. On December 19, 2008, while C.W. was watching television at his grandmother’s house, Fulgham,
 
 [3]
 
 who was in his mid-fifties at the time, entered the room and sat next to C.W. on a couch. According to C.W., he became “uncomfortable” when Fulgham moved closer to him and rubbed C.W.’s head and stomach. C.W. recalled that Fulgham told him he loved him and grabbed C.W.’s hand and placed it on his penis. Fulgham then opened C.W.’s mouth and forced it down onto his penis. C.W. testified that he pulled away and told Fulgham to leave him alone.
 

 ¶ 3. Early the next morning, C.W. called his father several times asking him to pick him up. When his father arrived at C.W.’s grandmother’s house at 7:00 a.m., he found C.W. standing outside in the cold with his bag packed ready to leave.
 

 ¶4. At trial, C.W.’s mother testified about a later phone conversation with Fulgham, during which Fulgham claimed C.W. had unzipped Fulgham’s pants and performed fellatio on him. Fulgham main
 
 *398
 
 tained that C.W. then began masturbating in his presence. Some time later, Fulg-ham called C.W.’s mother back and requested to speak to C.W. She asked why Fulgham had allowed this to happen, and Fulgham allegedly told her, “[h]e just wanted to see how far [C.W.] would go.” In June 2009, C.W.’s mother recorded a telephone conversation with Fulgham. At trial, the State offered the recording into evidence and played it for the jury during its case-in-chief.
 

 ¶ 5. Fulgham testified in his own defense and blamed C.W. for initiating the sexual encounter. He testified that while he was sleeping on the couch C.W. pounced on him, pulled down Fulgham’s pajamas, and grabbed Fulgham’s penis. Fulgham claimed C.W. then began masturbating. Fulgham contended this happened in the span of “possibly ten seconds.” Fulgham explained that when he came to his senses, he immediately called C.W.’s mother and voiced concerns that C.W.’s father had been molesting the young boy. Fulgham denied gratuitously touching C.W. in any manner.
 

 ¶ 6. The jury convicted Fulgham on both counts. And the circuit judge sentenced Fulgham to twenty years’ imprisonment for sexual-battery count and ten years’ imprisonment on the unlawful-touching-for-lustful-purposes charge, with the sentences to run concurrently. The circuit judge denied Fulgham’s post-trial motion for judgment notwithstanding the verdict or, alternatively, a new trial. Fulgham now appeals.
 

 DISCUSSION
 

 I. Admission of the Transcript
 

 ¶ 7. At trial, the State offered an audiotape and transcript that it claimed depicted a June 2009 telephone conversation between Fulgham and C.W.’s mother. Fulgham objected to the admission of both the tape and transcript. He argued neither the tape nor transcript memorialized a conversation between C.W.’s mother and grandmother that took place earlier during the phone call. C.W.’s mother explained the tape contained her entire conversation with Fulgham and that she did not record her earlier conversation with C.W.’s grandmother. The circuit court admitted the tape over Fulgham’s objection.
 

 A. Limiting Instruction
 

 ¶ 8. At trial Fulgham did not request a limiting instruction regarding the use of the transcript. Now on appeal, he claims error in the circuit court’s failure to instruct the jury sua sponte that the audio recording, not the transcript, is the primary evidence of the conversation. Fulg-ham does not contest admission of the recording.
 

 ¶ 9. Though he claims reversible error in the circuit court’s failure to provide the unrequested cautionary instruction, he fails to point to any inaccuracies in the transcript. Nor does he assert any resulting prejudice. Further, at trial, he discovered what he deemed to be an error in the transcript, which the circuit judge corrected to Fulgham’s satisfaction. Then, Fulg-ham used the transcript, not the recording, to cross-examine C.W.’s mother.
 

 ¶ 10. The cases he cites in his appellate brief do not address whether a cautionary instruction concerning the permissible use of the transcript must be requested by counsel or raised sua sponte by the court.
 
 Coleman v. State,
 
 697 So.2d 777, 784-85 (Miss.1997) (approved cautioning jury that tape is primary evidence and advising the jury that transcript is merely for jury’s convenience in following tape);
 
 Dye v. State,
 
 498 So.2d 343, 344 (Miss.1986) (approved limiting instruction that tape is primary evidence and transcript is furnished
 
 *399
 
 for convenience in following tape);
 
 Denson v. State,
 
 858 So.2d 209, 211-12 (¶ ¶ 9-12) (Miss.Ct.App.2003) (permitted use of transcript where trial judge instructed jury that tape is primary evidence and any conflicts between the tape and transcript should favor recording).
 

 ¶ 11. Though Mississippi appellate courts have approved the use of transcripts when limiting instructions are given, neither the supreme court nor this court have addressed whether a trial court
 
 must
 
 provide, sua sponte, a cautionary instruction. The supreme court in
 
 Coleman
 
 and
 
 Dye
 
 favorably recognized the United States Fifth Circuit Court of Appeals’ decision in
 
 United States v. Onori,
 
 535 F.2d 938, 946-49 (5th Cir.1976), which analyzed procedures for dealing with alleged inaccuracies in transcripts of recordings.
 
 Coleman,
 
 697 So.2d at 785;
 
 Dye,
 
 498 So.2d at 344. Thus, we too turn to
 
 Onori
 
 for guidance.
 

 B.
 
 Onori
 

 ¶ 12. In addressing various methods for handling contested transcripts, the Fifth Circuit reasoned that district judges “need not necessarily listen to the tapes or pass on the accuracy of any transcript.”
 
 Onori,
 
 535 F.2d at 948. The
 
 Onori
 
 court explained if no “official transcript” can be developed, a transcript may be prepared containing both versions of disputed portions.
 
 Id.
 
 at 948-49 (citing
 
 United States v. Carson,
 
 464 F.2d 424, 437 (2d Cir.1972)). Or the jurors can be given two transcripts, provided the reasons for the disputed portions, and then instructed to determine for themselves which, if either, accurately reflects particular recorded portions.
 
 Id.
 
 at 949 (citing
 
 United States v. Chiarizio,
 
 525 F.2d 289, 293 (2d Cir.1975)). Yet another possibility calls for judges to first explain the alleged inaccuracies in the government’s transcript and then allow the recording, or disputed portions of the recording, to be played twice, once with each transcript.
 
 Id.
 

 ¶ 13. But regardless of the method employed,
 
 “[ujpon request by a defendant,
 
 the jury should be instructed that a transcript is just another piece of evidence subject to objections, that it may have to be evaluated for accuracy, and that the jury need not accept any proffered transcript as accurate.”
 
 Id.
 
 (emphasis added). The Fifth Circuit further reasoned, “[a]s with other forms of potentially prejudicial evidence, the key to protecting a defendant’s rights in this situation lies in
 
 seeking
 
 limiting instructions.”
 
 Id.
 
 (emphasis added).
 

 ¶ 14. Onori’s rationale — that defendants must request a transcript-based cautionary instruction — comports with our own evidentiary rules. Mississippi Rule of Evidence 105 instructs: “When evidence which is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court,
 
 upon request,
 
 shall restrict the evidence to its proper scope and instruct the jury accordingly.” (Emphasis added). Indeed, even when seeking to temper prejudice in admitting prior felony convictions under M.R.E. 404(b), the burden to request a limiting instruction remains with trial counsel.
 
 Brown v. State,
 
 890 So.2d 901, 913 (¶ 35) (Miss.2004).
 

 ¶ 15. It is undisputed Fulgham failed to request a limiting instruction concerning the jurors’ use of the transcript. It is certainly best practice for trial courts to fashion appropriate cautionary instructions, when admitting recordings and purported transcripts. But drawing from
 
 Onori
 
 and Rule 105, we find the burden falls on the trial counsel to request the-limiting instruction. Based on Fulgham’s failure to seek a cautioning instruction, we find no error in admission of the transcript.
 

 
 *400
 
 II. Cross-Examination
 

 ¶ 16. Fulgham next argues the circuit judge prevented development of his theory of the case. While cross-examining C.W.’s mother, Fulgham asked about C.W.’s friendships. The circuit judge sustained the State’s objection to the relevance of this line of questioning. In his appellate brief, Fulgham suggests his proposed inquiry aimed at fleshing out “[wjhether [C.W.] had previously shown predatory, or sexual aggressive tendencies, or acted inappropriately in some other way[.]” The State argues Fulgham waived this issue by failing to make a proffer on the record after the circuit judge sustained the objection.
 

 ¶ 17. Cross-examination is limited to relevant matters.
 
 Mitchell v. State,
 
 792 So.2d 192, 217 (¶97) (Miss.2001). A trial court’s ruling will not be disturbed unless there is abuse of discretion.
 
 Adams v. State,
 
 851 So.2d 366, 376 (¶28) (Miss.Ct.App.2002). “When a trial court rules so as to prevent certain testimony from being introduced, it is incumbent on the party to make a proffer of what the witness would have testified to or the point is waived for appellate review.”
 
 Turner v. State,
 
 732 So.2d 937, 951 (¶ 55) (Miss.1999) (citing
 
 Evans v. State,
 
 725 So.2d 613, 669 (¶ 239) (Miss.1997)).
 

 ¶ 18. Because Fulgham made no on-the-record proffer of C.W.’s mother’s proposed testimony, he waived his opportunity to challenge the circuit judge’s ruling.
 

 ¶ 19. THE JUDGMENT OF THE WEBSTER COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, SEXUAL BATTERY, AND SENTENCE OF TWENTY YEARS AND COUNT II, TOUCHING A CHILD FOR LUSTFUL PURPOSES, AND SENTENCE OF TEN YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WEBSTER COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
 

 [1]
 

 . We use initials to protect the identity of minors.
 

 [2]
 

 . We use the terms grandmother, mother, and father to represent C.W.'s adoptive grandmother, mother, and father.
 

 [3]
 

 .C.W.’s grandmother was previously married to Fulgham’s father. Upon his death, she dated and eventually married Fulgham, her stepson.