# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01288-COA

JEMARCUS CURRY A/K/A JERMARCUS CURRY          APPELLANT

v.

STATE OF MISSISSIPPI          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/24/2015 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF TWO COUNTS OF SIMPLE ASSAULT ON A LAW ENFORCEMENT OFFICER AND SENTENCED AS HABITUAL OFFENDER TO FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ON EACH COUNT, WITH THE SENTENCES TO RUN CONSECUTIVELY |
| DISPOSITION: | AFFIRMED - 10/04/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., WILSON AND GREENLEE, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     Jemarcus Curry, an inmate at the Central Mississippi Correctional Facility (CMCF),

was convicted of assaulting two correctional officers.  Curry argues that his convictions

should be reversed because the trial judge erroneously permitted the prosecutor to cross-examine him about his prior disciplinary violations and failed to give a limiting instruction. Curry also argues that he is entitled to a new trial because of improper arguments by the prosecutor and ineffective assistance of counsel. We find no reversible error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On June 20, 2014, correctional officer Georgia Shelby[1] observed thirty-five to forty inmates gathered in a hallway at CMCF. The inmates were preventing a CMCF employee from passing through the hallway. Shelby testified at trial that the inmates were designated as "lockdown offenders" due to prior disciplinary violations. Protocol required lockdown offenders to stand against the wall and face the wall, but these offenders were milling about in the hallway. Shelby asked another correctional officer, Leon Shields, for help clearing the hallway and restoring order. When Shelby and Shields reached the group, Shelby ordered them to face the wall, and all of the inmates except for Curry and one other complied. Shelby then repeated her order, but Curry continued to ignore her.

¶3. Shelby testified that she then "touched" Curry's shoulder and said, "You need to step out of line." In response, Curry told Shelby not to touch him and to keep her "F-ing hands to [her]self." Before Shelby could say anything else, Curry punched her in the face five or six times and then began kicking her. Shelby testified that Curry broke her glasses and that she suffered a contusion to her forehead and additional bruising.

¶4. Shields similarly testified that Curry ignored Shelby's orders to face the wall. Shields

---

[1] Shelby was a captain at the time of the assault but is now deputy warden at CMCF.

testified that Shelby then told Curry to step out of line, "grabbed" his shirt, and told him to "step over here." Curry said, "Don't touch me." Curry then swung and punched Shelby in the face. Shields then struggled with Curry and, with the help of other officers, eventually subdued him. During the struggle, Curry hit Shields in the eye.

¶5. Curry agreed that there was "a bunch of screaming" and "a lot of chaos in the hall" just before the incident. He also admitted that he was not facing the wall, as required by protocol, when Shelby approached him. Curry claimed that Shelby screamed at him to "turn around," that he complied with her order, and that she "grabbed" him simply because he did not turn around "fast enough." Curry testified that he "snatched away from [Shelby]" and that his "exact words" to her were, "Please don't touch me." Curry claimed that Shelby then grabbed him again and began hitting him. He testified that he tried to defend himself, but Shields and other officers soon began hitting and kicking him too, so he just "folded up and tried to protect [him]self." Curry testified that officers continued hitting and kicking him. He claimed that even after he was taken to the prison medical unit, officers began assaulting him again as soon as the nurse left the room.

¶6. Curry was indicted in the Rankin County Circuit Court on two counts of simple assault on a law enforcement officer (one count each for Shelby and Shields). The jury found him guilty on both counts, and the trial court sentenced him as a habitual offender to five years in the custody of the Mississippi Department of Corrections on each count, with the sentences to run consecutively. Curry filed a timely notice of appeal.

**DISCUSSION**

3

¶7.    Curry raises two issues on appeal, each of which involves multiple sub-issues.  First, he claims that the trial court erred by allowing the State to question him about his prior disciplinary violations and by not instructing the jury as to the limited purpose for which it could consider the violations.  Second, he argues that his trial was rendered unfair by parts of the prosecutor's closing argument and alleged ineffective assistance of counsel.  We find no reversible error and affirm.

## I.    Curry's Prior Disciplinary Violations

¶8.    The trial judge permitted the State to cross-examine Curry about the fact that he had five prior disciplinary violations for making lewd gestures at correctional officers, threatening officers, or throwing things on officers.  No additional detail was brought out regarding these prior incidents.  Curry argued that this cross-examination violated Mississippi Rules of Evidence 403 and 404(a).  We disagree.

¶9.    On direct examination, Curry testified that he acted in self-defense because he "was scared" because he had "been in a lot of situation[s] where [he had] seen [guards] jump on inmates."  Curry then testified that he was assaulted again after he was taken to the medical unit, and he started to testify about "several [other alleged] incidents" involving the same group of officers who allegedly assaulted him in the medical unit.  This alleged incident, of course, occurred at a different place and time than the subject of the trial—Curry's altercation with Shelby and Shields.  The State objected to testimony about "prior incidents unless [it was also] allowed to go into prior incidents."  The trial judge sustained the objection and instructed Curry to "[o]nly talk about this event."  Nonetheless, Curry went on to assert,

4

while still testifying on direct examination, that he was "in fear" of the guards because he had "seen it happen plenty of times" and "[i]t never ends." Once Curry's direct examination concluded, the State argued that his testimony had opened the door to cross-examination about his prior disciplinary violations. The trial judge agreed with the State that Curry had "raised the issue."

¶10.    The Mississippi Supreme Court has explained that

> evidence relevant to a noncharacter purpose is *admissible* under [Rule] 404(b) *even if* it also reflects on a defendant's character. Evidence is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity. Stated another way, the rule is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character. Any undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the [Rule] 403 balancing test . . . .

*Green v. State*, 89 So. 3d 543, 551 (¶18) (Miss. 2012) (brackets omitted) (emphasis in original) (quoting *People v. Mardlin*, 790 N.W.2d 607, 612 (Mich. 2010)).

¶11.    In the present case, Curry testified on direct that he was "scared" and "in fear" of the guards because he claimed that he had seen them assault inmates many times in the past. The fact that Curry had been cited several times previously for making lewd gestures at the guards, threatening them, and even throwing things at them tends to rebut his claim that he was scared and in fear of being assaulted by them. Thus, the prior incidents were relevant and admissible for a permissible purpose under Rule 404(b).

¶12.    We also reject any suggestion that Curry was a victim of unequal treatment because the trial judge limited his testimony regarding prior alleged assaults by guards but then

5

permitted cross-examination regarding his prior disciplinary violations. Curry was allowed to testify on direct that he was in fear of Shelby because he had witnessed prior assaults by guards. The judge only precluded him from testifying about prior alleged incidents involving a different group of officers who allegedly assaulted him in the medical unit, which was sometime after his altercation with Shelby and Shields. Then, the State was allowed to cross-examine Curry in general terms about his own prior disciplinary violations. As we have just discussed, there was a permissible purpose for the State's questions, and there was nothing unfair or unequal about the trial judge's rulings.

¶13. Nor was the trial judge's ruling an abuse of discretion under Rule 403. Evidence that is admissible under Rule 404 must be "filtered through Rule 403." *Green*, 89 So. 3d at 549 (¶15). However, "'Rule 403's scope is narrow,' as 'it is an extraordinary measure that should be used very sparingly.'" *Owens v. Kelly*, 191 So. 3d 738, 745 (¶23) (Miss. Ct. App. 2015) (quoting *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007)). Relevant evidence should not be excluded under Rule 403 unless its "probative value is *substantially outweighed* by the danger of unfair prejudice." M.R.E. 403 (emphasis added). "Even then, exclusion is permissive . . . , not mandatory. That decision is committed to the broad discretion of the trial judge, and our standard of review is highly deferential." *Owens*, 191 So. 3d at 745 (¶23).

¶14. Here, Curry's prior disciplinary violations were relevant and probative with respect to his claim that he acted in self-defense and out of fear, and any "unfair prejudice" was minimal. The jury already knew that Curry was a "lockdown offender," which meant that

6

he had prior disciplinary violations. There was no objection to this testimony, which was necessary background to the altercation for which Curry was on trial. It is unlikely that Curry suffered any significant marginal prejudice when the jury learned of the general nature of those violations—certainly not enough "unfair prejudice" to substantially outweigh the probative value of that evidence. Accordingly, the trial judge did not abuse his discretion by permitting cross-examination on the subject.

¶15. Finally, Curry makes a related argument that the trial judge failed to comply with Mississippi Rule of Evidence 105 because he did not give a limiting instruction concerning the disciplinary violations. As amended effective July 1, 2015,[2] Rule 105 provides that "[i]f the court admits evidence that is admissible . . . for a purpose—but not . . . for another purpose—the court, unless expressly waived or rebutted, shall restrict the evidence to its proper scope, contemporaneously instruct the jury accordingly, and give a written instruction if requested."[3] However, even assuming that the trial judge erred by not offering a limiting instruction, the error was harmless.

¶16. To begin with, even as amended, Rule 105 only requires the judge to offer a limiting instruction, which the defendant is free to "waive[]." M.R.E. 105. The Supreme Court has recognized on a number of occasions that the defendant may not want such an instruction because it may actually "focus the jury's attention" on the potentially prejudicial testimony.

---

[2] Curry was tried on August 17, 2015.

[3] Prior to July 1, 2015, Rule 105 provided that such an instruction should be given only "upon request," so the burden was on the defendant to request a limiting instruction if he desired one. *See Tate v. State*, 912 So. 2d 919, 928 (¶28) (Miss. 2005).

*Tate*, 912 So. 2d at 928 (¶28) (quoting *Brown v. State*, 890 So. 2d 901, 913 (¶35) (Miss. 2004)). Thus, Curry's claim on appeal that he was prejudiced because such an instruction was not given is highly speculative. Curry's attorney presumably knew that such an instruction was available upon request, but he did not ask for it. Under the circumstances, we cannot say that the absence of a limiting instruction deprived Curry of a fair trial. *See Robinson v. State*, 940 So. 2d 235, 239 (¶11) (Miss. 2006) (holding that the erroneous denial of a limiting instruction is harmless error unless it deprives the defendant of a fair trial).

## II. Prosecutorial Misconduct and Ineffective Assistance of Counsel

¶17. Curry also argues that remarks made by the State during closing arguments were unfairly prejudicial and so inflammatory as to affect his right to a fair trial. He further claims that his counsel's failure to object to these remarks and other alleged failures rose to the level of ineffective assistance of counsel. Curry claims that the cumulative effect of these errors resulted in an unfair trial and requires a new trial. For the reasons that follow, we disagree.

### A. Alleged Prosecutorial Misconduct

¶18. Though attorneys are generally allowed a wide latitude during closing remarks, prosecutors cannot "use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." *Sheppard v. State*, 777 So. 2d 659, 661 (¶7) (Miss. 2000). However, because there was no contemporaneous objection by Curry, we review the State's remarks only to determine if they were "so inflammatory that the trial court should have objected on [its] own motion." *Dunaway v. State*, 551 So. 2d 162, 164 (Miss. 1989).

¶19. Curry first complains about the manner in which the prosecutor referred to his prior

disciplinary violations. In closing, the State argued:

> And, quite frankly, there comes a point in time where what you've done in the past does matter and it does count. And you don't get to make lewd gestures to officers. You don't get to throw things on officers. You don't get to tell officers that you're going to hurt them and then come into court and pitch up like a choirboy and have everybody expect to believe you.
>
> You don't get to spend your life committing felonies and breaking the rules and folding up your arms and saying "You can't touch me" and then come up here and say "I am worthy of credibility." . . .
>
> These are the facts and this is the evidence, and the only issue for you to go back there and decide is whether you believe this Defendant acted in necessary and proper self defense.
>
> And I submit to you that when you couple the attitude and the rule violations and the threats and everything there that it's not reasonable to believe that a man with a torn rotator cuff [(Shields)] and a 50-year-old woman [(Shelby)] decided to go take on 40 inmates. That's just not reasonable.
>
> He wasn't acting in necessary self defense . . . . He was just fighting, just lashing out, just acting out; frankly, just like he has a history of doing it.

¶20. We conclude that the prosecutor's comments were within the bounds of legitimate argument. As discussed above, the prosecutor's cross-examination of Curry regarding his prior disciplinary violations was permissible for the purpose of rebutting Curry's claim that he acted out of "fear" of the guards. This evidence certainly went to the "credibility" of Curry's claim. In any event, the prosecutor's comments were not so "inflammatory" that the trial judge was obligated to cut off the argument sua sponte.

¶21. Curry also claims that he was unfairly prejudiced by the following argument by the prosecutor:

> The State of Mississippi is not going to parade in 39 violent, lockdown inmates through a civilized courtroom where they can throw things on people, where

9

they can make lewd gestures, where they can make threats.

. . . .

And you have no evidence [of self-defense] other than the word of a two-time convicted felon at age 23 who can't even conform his behavior to the point they have to lock him down.

¶22. Curry did not make a contemporaneous objection to this argument either, but he now claims that the prosecutor's statements amounted to an impermissible comment on his failure to call witnesses (the other inmates in the hallway) who were "equally available to both sides." *Randall v. State*, 806 So. 2d 185, 210-11 (¶¶56-58) (Miss. 2001). However, Curry neglects to mention that his own attorney raised the issue first by arguing that the State's failure to produce these same witnesses at trial called into question the State's case and created reasonable doubt. This was not a proper subject for argument by Curry's attorney. *See id.* Given that Curry's attorney made the argument first, we cannot say that the State's responsive argument was so inflammatory and prejudicial as to amount to plain error, even assuming that a timely objection might have been well taken. *See Blue v. State*, 674 So. 2d 1184, 1207 (Miss. 1996) (concluding that defense counsel's own closing argument opened the door to State's responsive argument concerning facts not in evidence), (overruled on other grounds by King v. State, 784 So. 2d 884, 890 (¶23) (Miss. 2001).

### B.      Ineffective Assistance of Counsel

¶23. Curry also claims that he received ineffective assistance of counsel because his attorney failed to object during the State's closing argument and failed to request a limiting instruction. In order to establish a constitutional claim of ineffective assistance of counsel,

10

a defendant must show *both* (1) that "counsel's performance was deficient"—i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—*and* (2) that he suffered prejudice as a result—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Curry fails to satisfy either prong of this test.

¶24. We presume that counsel's decision not to request a limiting instruction was within the ambit of trial strategy. *See, e.g.*, *Herrington v. State*, 102 So. 3d 1241, 1246 (¶18) (Miss. Ct. App. 2012). This presumption is appropriate given that, as discussed above, such an instruction has the potential to do the defendant more harm than good. *See id.* We also generally assume that counsel's failure to object during closing argument reflects trial strategy, not ineffective assistance. *See, e.g.*, *White v. State*, 847 So. 2d 886, 891 (¶19) (Miss. Ct. App. 2002). Moreover, for the reasons already discussed in the preceding section, nothing in the State's closing argument was so prejudicial and "serious as to deprive [Curry] of a fair trial." *Strickland*, 466 U.S. at 687. Accordingly, Curry's ineffective assistance claim is without merit.

**CONCLUSION**

¶25. There was no reversible error in connection with either the State's cross-examination of Curry or the State's closing argument. Accordingly, we affirm.

¶26. **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF TWO COUNTS OF SIMPLE ASSAULT ON A LAW ENFORCEMENT OFFICER AND SENTENCES AS A HABITUAL OFFENDER OF FIVE YEARS ON EACH COUNT, WITH THE SENTENCES TO RUN**

11

**CONSECUTIVELY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR.  IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**