# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00765-COA

**CHRISTOPHER BROWN A/K/A CHRISTOPHER DALTON BROWN**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/13/2018 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/24/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND C. WILSON, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. A Warren County jury found Christopher Brown guilty of attempted murder and armed carjacking. Brown was sentenced to terms of thirty-five years for attempted murder, and thirty years, with twenty years to serve, for armed carjacking, to be served consecutively in the custody of the Mississippi Department of Corrections (MDOC). Brown was also sentenced to serve five years of post-release supervision.

¶2. Brown appeals, asserting that he received ineffective assistance of counsel when his lawyer conceded Brown's guilt on the carjacking charge in his opening and closing

arguments.

¶3.     Brown also asserts that his case should be reversed and remanded for a new trial because a cautionary instruction was not given to the jury on their use of interview transcripts at trial.  Recordings of two of Brown's police interviews were admitted into evidence and played at trial.  The interviews were transcribed and the jurors were given copies of the transcripts to use in following the recordings while they were played.  Brown asserts that the trial court erred when it failed to give an unrequested cautionary instruction to the jury that the recordings, not the transcripts, were the primary evidence of what occurred during the interviews.  Alternatively, Brown asserts that he received ineffective assistance of counsel when his lawyer failed to request such a cautionary instruction.

¶4.     For the reasons addressed below, we deny Brown's ineffective-assistance-of-counsel claims without prejudice to his right to pursue relief on these alleged errors in a petition for post-conviction relief.  Additionally, we find no merit in Brown's assertion that he is entitled to a new trial because the trial court did not, sua sponte, issue a cautionary instruction to the jury about the interview transcripts.  As such, we affirm Brown's convictions and sentences.

### STATEMENT OF FACTS AND COURSE OF PROCEEDINGS

¶5.     On March 5, 2016, an injured man was found lying in the parking lot of Blackburn Motor Company in Vicksburg, Mississippi.  The record reflects that the injured man was identified as Jonathan Thomas.  He had been shot in the left hand and in the left side of his face and his 2014 silver Honda Accord was missing.  On March 12, a week after Thomas was shot, Brown and Christopher Livingston were arrested in Las Cruces, New Mexico.

They were implicated in Thomas's shooting and the theft of Thomas's car.

¶6.     On July 27, 2016, Brown and Livingston were jointly indicted for attempted murder and armed carjacking.

¶7.     Brown was interviewed three times while in police custody. On March 12, 2016, Sergeant Chase Thouvenall of the Dona Ana County Sheriff's department interviewed Brown after his arrest in New Mexico. This interview was recorded but not transcribed. On March 16, 2016, Jeff Merritt and Curtis Judge, investigators with the Vicksburg Police Department, interviewed Brown in New Mexico. This interview was recorded by audio and video and was transcribed. On March 22, 2016, Investigator Merritt and Troy Kimble, who was an officer with the Vicksburg Police Department at the time, interviewed Brown in Vicksburg, Mississippi. This interview was conducted, recorded, and transcribed in two parts.

¶8.     During most of Part One of the March 22 interview, Brown denied shooting Thomas and said that Livingston shot Thomas twice, just as Brown had stated in his March 16 interview. At the end of Part One, however, Brown confessed to shooting Thomas. The record reflects that the officers then ended Part One and gave Brown time "to collect himself." Part One of Brown's March 22 statement was recorded by audio and video and was transcribed. Later that same day, Investigator Merritt and Officer Kimble continued the interrogation (Part Two of the March 22 interview) and Brown confessed that he shot Thomas and took his car. There is only an audio recording of Part Two, and it was transcribed.

3

¶9. Thomas died on December 30, 2017. The prosecutor and defense counsel stipulated that the March 5, 2016 shooting did not cause Thomas's death.

¶10. Brown filed a number of motions that were heard prior to his March 2018 trial, including Brown's motion to sever his trial from Livingston's trial because each defendant had given statements exculpating themselves while inculpating their co-indictee in Thomas's shooting. The trial court granted Brown's severance motion, and Brown was tried separately from his co-indictee, Livingston.

¶11. Brown also moved to suppress the confession he gave on March 22, 2016. Brown asserted that the confession was coerced. The trial court denied this motion. Additionally, Brown moved, in limine, to redact portions of the police interviews referencing a prior conviction for shoplifting and other parts of these interviews that "mention other crimes, prison gang membership, drug trafficking, and working for a drug cartel." The trial court granted this motion. The recordings were edited, and the transcripts were redacted, in accordance with the trial court's order.

¶12. The three-day trial began on March 19, 2018. The State's first witness was Vicksburg police officer Eric Perkins who testified that he found an injured man lying in the Blackburn Motor Company parking lot on March 5, 2016. Officer Perkins testified that he believed that the man was alive based upon movements of his right arm. He identified the man as Jonathan Thomas by looking in the injured man's wallet.

¶13. Penny Jones, Patrol Commander Manager with the Vicksburg Police Department, testified that when she arrived on the scene Thomas had already been taken to the hospital,

4

so she went to the hospital and observed that he had injuries to his left eye and cheek areas. She testified that Thomas was not responsive.[1]  Captain Jones testified that she also interviewed Thomas's family members and learned that Thomas drove a 2014 silver Honda Accord.  She testified that a nationwide "Be On The Lookout" (BOLO) was entered on the car.

¶14.   Curtis Judge, an investigator with the Vicksburg Police Department, testified that when he arrived on the scene, he noticed a pool of blood near a red Ford truck and took photos of the scene.  Investigator Judge testified that later that day he went to the hospital and observed what he believed were gunshot wounds to Thomas's left hand and to his face.

¶15.   Sergeant Benjamin Martin of the Dona Ana County Sheriff's Department was the State's next witness.  He testified that he spotted the 2014 silver Honda Accord in Las Cruces, New Mexico, and pursued the vehicle.  The vehicle ultimately jumped a curb, and the occupants fled.  Sergeant Martin testified that he apprehended Livingston, and then turned the case over to an investigator in his office, Investigator Chase Thouvenall. Investigator Thouvenall testified that he confirmed that the Vehicle Identification Number (VIN) of the recovered car was Thomas's silver Honda Accord.  He also testified that he interviewed Livingston, who told him that Brown could be found in "Tent City," a charity outreach place where people generally would go to get their lives back on track.  Investigator Thouvenall testified that he found Brown at Tent City, and Brown took him to a site where Brown told Investigator Thouvenall that he had disposed of a pair of boots and Thomas's

---

[1] As noted, Thomas died on December 30, 2017.  The record reflects that Thomas gave no statement concerning the March 5, 2016 incident.

identification card. Investigator Thouvenall further testified that Brown told him that the boots were his, and that there was what appeared to be blood on the boots.

¶16. Investigator Judge was recalled as a witness and testified that he and Investigator Merritt traveled to New Mexico, where the missing Honda Accord had been recovered and where Brown had been apprehended. Investigator Judge testified that he examined the vehicle on March 15. He observed what appeared to be blood on the driver's side of the car and collected samples. Investigator Judge also inspected the car's trunk and found the car's license plate and a brown Carhartt jacket. The jacket appeared to be bloodstained. He sent the brown jacket and the swabs from the driver's side of the car to the Mississippi Crime Lab for testing.

¶17. Amy Malone was accepted as a forensics expert specializing in serology. She testified that the samples collected from the boots, the brown Carhartt jacket, and the swabs from the Honda were blood. Kathryn Rogers was accepted as a forensics DNA analyst. She testified that she was able to obtain a DNA profile from a bucal swab taken from Thomas, and his DNA profile matched that of the blood from the boots, the Carhartt jacket, and the swabs from the blood in the car. Dr. William Tew was accepted as an expert in radiology. He testified that based upon his review of Thomas's CT scans, there was a bullet path entering below Thomas's left eye with fragments along the trail and the projectile remaining in Thomas's brain.

¶18. Investigator Merritt of the Vicksburg Police Department, who traveled with Investigator Judge to New Mexico, testified that they interviewed Brown on March 16, 2016.

The video recording of this interview, edited pursuant to the trial court's order granting Brown's motion in limine described above, was admitted into evidence. At the request of defense counsel, properly redacted transcripts were also given to the jurors for their use while they viewed the interview. The parties agreed that there were some sound problems with the video. No cautionary instruction regarding the jury's use of the transcripts was requested, nor did the trial court give any such instruction. The transcripts were collected when the video was over.

¶19. The record reflects that in the March 16, 2016 interview, Brown told the officers that he and Livingston had "walked away from" a restitution center and that, after living in a wooded area for about a week, he and Livingston decided that they "[were] going to steal a vehicle and get somewhere." This was the evening of March 5, 2016. Brown said that when he and Livingston got to Blackburn Motor Company, they saw a man sitting in a grey Honda Accord with the driver's side door open and looking at a truck. Brown said that he began talking to this person (Thomas), and Livingston jumped in the passenger seat. According to Brown, Thomas and Livingston began "tussling," and Livingston shot Thomas twice. Brown admitted that he was present during the incident but denied, a number of times, that he had shot Thomas. Brown said that after Thomas had been shot, he fell on Brown, and Brown pulled Thomas from the vehicle. Brown said that he then got in the driver's seat and drove the Honda off the lot with Livingston in the passenger seat. They drove to New Mexico. Brown said that he drove the "whole time." During the course of the interview, Brown also told the officers he was wearing a brown Carhartt jacket on March 5.

¶20. The State's final witness was Troy Kimble, an officer with the Vicksburg Police Department in March 2016. He testified that he and Investigator Merritt interviewed Brown on March 22, 2016 in Vicksburg. As noted above, this interview had two parts. The edited recordings of both parts were admitted into evidence at trial, and the jury was provided properly redacted transcripts of the interviews for their use while the recordings were played. No cautionary instruction regarding use of the transcripts was requested or given. As noted above, in Part One Brown denied shooting Thomas for most of the interview, and he described the same circumstances relating to the shooting that he described in his March 16 interview. Brown also said that after Livingston shot Thomas, Brown pulled Thomas out of the car, got in the driver's seat of the car, drove the vehicle off the Blackburn Motor Company lot and "stayed with the car all the way to New Mexico." In the course of this explanation, Brown stated, "I'm not saying I'm not guilty of anything."

¶21. Officer Kimble testified that he used interview techniques, including bluffing about information known to the police, while interviewing Brown. He further testified that this other information did not exist and that this technique was used to put pressure on Brown. The record reflects that when Brown asked the officers what proof of the shooting they had against him, Officer Kimble said: "When they're sticking a needle in your arm, then you ask them to tell me to come back and ask [me] to show you that sh–. You understand?" Shortly after that statement was made, Brown apologized "for lying to y'all" and admitted that he shot the gun. Part One of the interview closed with Officer Kimble telling Brown he would give him some time to "collect himself."

¶22.  Part Two of the interview was only an audio recording and contained Brown's detailed confession that he, not Livingston, shot Thomas two times.  He also said that he then pulled Thomas out of the car, left Thomas lying in the car lot, got into the driver's seat of the Honda, and drove out of the lot with Livingston in the passenger seat.  Brown stated that he drove the whole way to Las Cruces, New Mexico, with Livingston.

¶23.  The State rested.  The defense moved for a directed verdict, which the trial court denied.  Brown did not testify on his own behalf, and the defense did not put on any other evidence.

¶24.  A unanimous jury found Brown guilty of attempted murder and armed carjacking.  At the sentencing hearing, the trial court sentenced Brown to terms of thirty-five years for attempted murder, and thirty years, with twenty years to serve, for armed carjacking, to be served consecutively in the custody of MDOC.  Brown was also sentenced to serve five years' post-release supervision.  Brown moved for a judgment notwithstanding the verdict (JNOV) or a new trial, which was denied by the trial court.  Brown appeals.

**DISCUSSION**

I.  **Ineffective Assistance of Counsel: Concession of Guilt on Brown's Carjacking Charge**

¶25.  Brown asserts that he received ineffective assistance of counsel because his lawyer conceded Brown was guilty of carjacking in his opening and closing arguments.  According to Brown, "[I]t cannot be said with absolute certainty that a conviction for car[]jacking would have been returned by the jury." The State asserts that deciding whether to concede one charge in a two-count indictment is a matter of trial strategy and is not a basis for an

9

ineffective-assistance claim in this case. For the reasons explained below, we deny Brown's ineffective-assistance-of-counsel claim without prejudice to his right to seek relief as to this claimed error in a properly filed petition for post-conviction relief. *See* Miss. Code Ann. § 99-39-7 (Rev. 2015) (providing that when the petitioner's conviction and sentence have been affirmed on direct appeal, the petitioner must obtain leave of the Mississippi Supreme Court before filing a petition for post conviction relief in the circuit court).

¶26. In opening argument, Brown's counsel stated as follows:

> *I think that when you hear the evidence you will have no choice and I think you should convict Christopher Brown of the charge of car-jacking.* All right. He drove the car. He drove it away from the scene but I think the proof will leave a doubt in your mind and you must abide by that reasonable doubt as to his involvement . . . [in] actually shooting John Thomas.

(Emphasis added to portions concerning the carjacking charge against Brown).

¶27. In his closing argument, Brown's counsel began by emphasizing Brown's defense to the attempted murder charge. He reminded the jury that Brown said that Livingston shot Thomas, and that Brown denied that he had shot Thomas "twenty-four times." Brown's counsel further stated that it was not until Officer Kimble "threaten[ed] [Brown] with the death penalty" that Brown confessed. Brown's counsel then stated:

> What I am asserting to you is that is a coerced confession[,] and ladies and gentlemen, it happens.

> All right, that is what I am asking you to do. You've got to look beyond the superficiality and follow the speech and the speech patterns in [Brown's] prior statements and then follow the way Troy Kimble coerced and manipulated.

> [A]fter John Thomas is shot by Christopher Livingston, Christopher Brown pulls his body out of the car and gets in the car and they drive off.

10

*All right, I will assert to you ladies and gentlemen, Count 2, carjacking—he is there with Christopher Livingston and he is guilty of car-jacking.* But I am asking you to think about this. I mean, he needs to go to jail for that but don't send him to jail for something that he did not do that day. Don't do that.

One of the theories of the State's case is that Christopher Brown was an aider and abetter. Okay. *I would assert that is true as to the car-jacking and stealing the car*[*—there*] *is no doubt that he testified that he drove the car*. But as to the attempted murder, . . . mere presence [at] the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a Defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the Defendant was a participant and not merely a knowing spectator. All right. So, at the point where Christopher Livingston is fighting with . . . Thomas inside the car, has the gun, ends up and does shoot him twice. Christopher Brown is outside of the car. He is not an aider and abetter to that attempted murder. He is not an aider to that.

(Emphasis added to portions concerning the carjacking charge against Brown).

¶28. To establish his ineffective-assistance claim, Brown must "prove, under the totality of the circumstances that (1) his attorney's performance was defective and (2) the deficiency deprived the defendant of a fair trial." *Collins v. State*, 221 So. 3d 366, 372 (¶20) (Miss. Ct. App. 2016); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, a "defendant must demonstrate that his counsel's performance was deficient and that the deficiency prejudiced the defense of the case." *Brown v. State*, 798 So. 2d 481, 493 (¶14) (Miss. 2001). "Prejudice" in this context that means that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 494 (¶14). Finally, "[t]here is a strong presumption that counsel's performance falls within the range of reasonable professional assistance." *Collins*, 221 So. 3d at 372 (¶20) (quoting *Hiter v. State*, 660 So. 2d 961, 965 (Miss. 1995)).

¶29. Ordinarily, this Court does not consider an ineffective-assistance of counsel claims

11

when the claim is made on direct appeal "because there is usually insufficient evidence within the record to evaluate the claim." *Pustay v. State*, 221 So. 3d 320, 350 (¶97) (Miss. Ct. App. 2016). This Court, however, "may address the claims on direct appeal if the issues are based on facts fully apparent from the record." *Schrotz v. State*, 179 So. 3d 1200, 1204-05 (¶11) (Miss. Ct. App. 2015) (quoting *Sandlin v State*, 156 So. 3d 813, 819 (¶20) (Miss. 2013)). "If the record is not sufficient to address the claims on direct appeal, the Court should dismiss the claims without prejudice, preserving the defendant's right to raise the claims later in a properly filed motion for post-conviction relief." *Id*.

¶30.     In *Nelson v. State*, 222 So. 3d 318 (Miss. Ct. App. 2017), we also recognized that an ineffective-assistance-of-counsel claim may be considered where "the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Id.* at 322 (¶5). However, we have recently clarified this statement. In *Bishop v. State*, No. 2018-KA-00487-COA, 2019 WL 3297038 (Miss. Ct. App. July 23, 2019), we found that "although the parties stipulate that the record is adequate, we find [defendant's] ineffective-assistance-of-counsel claim is based on facts not fully apparent from the record, including facts related to his counsel's trial strategy and tactics." *Id.* at *8 (¶47). For this reason, we "declin[ed] to address the claim on direct appeal but preserv[ed] [defendant's] right to pursue his claim through a petition for post-conviction collateral relief." *Id.* Likewise, in this case, both the State and Brown assert that the record is sufficient to allow the Court to decide this issue on direct appeal. Nevertheless, our own review of the record and the applicable law, as addressed below, indicates that this issue

involves our consideration of defense counsel's trial strategy. *Id.* This point is beyond the contents and face of the record. *Cf. Evans v. State*, 725 So. 2d 613, 706 (Miss. 1997) (deciding, on direct appeal, whether defense counsel's decision to concede guilt constituted ineffective assistance of counsel where the record reflected defense counsel's trial strategy in doing so). For this reason, we dismiss Brown's ineffective-assistance claim based upon defense counsel's concession that Williams was guilty of Count 2, armed carjacking, without prejudice to Brown's right to seek post-conviction relief on this alleged error. *Bishop*, No. 2018-KA-00487-COA, 2019 WL 3297038, at *8 (¶47).

¶31. In support of his ineffective-assistance argument, Brown relies upon a statement made by the Mississippi Supreme Court in *Farraga v. State*, 514 So. 2d 295, 308 (Miss. 1987), that "no attorney representing a client who has pleaded not guilty should concede in his oral argument to a jury that his client was in fact guilty of the crime charged in the indictment." *Farraga* involved a one-count indictment for capital murder. *Id.* at 296. Defense counsel conceded in closing argument that Farraga was guilty of murder, a lesser-included offense of capital murder. *Id.* at 307-08.

¶32. The supreme court rejected Farraga's ineffective-assistance claim based upon this concession, observing that "[w]hen proof of certain facts is overwhelming . . . an attorney may find it strategically prudent to concede such facts while still denying that his client is guilty of the crime charged in the indictment." *Id.* at 308. The supreme court recognized that "[t]he proof offered at trial was overwhelming that [Farraga] did murder the infant," *id.*, and that his attorney's "candor at the guilt phase could have helped Farraga in the sentencing

13

phase." *Id.* The supreme court further recognized that "[a]n attorney who, while sincerely trying to help his client, at the same time is open and honest with the jury is more likely to receive a sympathetic and open ear in his other arguments." *Id.* Under these circumstances, the supreme court found that defense counsel's "closing argument was the product of a tactical decision and the best argument he could make given the circumstances under which he found his client." *Id.*

¶33. In *Williams v. State*, 791 So. 2d 895 (Miss. Ct. App. 2001), this Court applied similar reasoning under circumstances closely analogous to those in this case—the defendant's counsel conceded one count of an indictment in the hope of avoiding conviction on a second count having a greater maximum sentence. *Id.* at 899-900 (¶14). Williams was charged with aggravated assault for shooting the victim, Davis, and for then kidnapping her. *Id.* at 897 (¶2). There was a videotape of the shooting. *Id.* at 899 (¶14). Williams asserted that with respect to the kidnapping charge, he was actually trying to get Davis to the hospital following the shooting. *Id.* Aggravated assault carried a maximum sentence of twenty years, while kidnaping carried a thirty-year maximum sentence. *Id.* at 899 (¶13) (citing Miss. Code Ann. §§ 97-3-7, 97-3-53 (Rev. 2000)). Williams's counsel, in both opening statement and in closing, conceded Williams's guilt on the aggravated assault charge. *Id.* at 899 (¶12).

¶34. The Court began its analysis by noting that "a trial tactic intended to lessen the defendant's maximum punishment in those instances where conviction seems likely does offer some hope of benefit to the defendant." *Id.* at 899 (¶13). Addressing the case before it, the Court recognized that "it could be argued that a viable trial strategy existed to attempt

14

to win some measure of favor with the jury by candidly conceding the overwhelming nature of the evidence of guilt on [the aggravated assault] count." *Id.* at 899 (¶14). The Court observed that "[t]he potential advantage [to this strategy] would be that the jury, in reaction to such a forthright concession, might give more credence to Williams's assertion that the automobile journey was not to kidnap [Davis] but to get her to a hospital to receive needed medical treatment." *Id.* Under these circumstances, the Court "decline[d] to find that counsel's statements to the jury, acknowledging the existence of evidence that was essentially beyond dispute and for which the defense could offer no exculpatory explanation, to be such ineffective assistance of counsel as to require us to set aside this conviction." *Id.* at 900 (¶16); *see also Schrotz*, 179 So. 3d at 1207 (¶17) ("Given the circumstances, we find that it was a reasonable trial strategy to admit guilt to misdemeanor failure-to-stop-a-motor vehicle in an attempt to avoid conviction on the burglary-of-a-dwelling charge. Thus, we cannot find Schrotz's counsel ineffective.")

¶35. As stated, Brown asserts that he did not receive effective counsel because his lawyer conceded his guilt on the carjacking charge against him. The statutory elements for carjacking under section 97-3-117 (Rev. 2000) include "(1) a taking of a motor vehicle (2) from someone's immediate actual possession (3) by force, stealth or violence. Force or violence includes putting the victim in fear of the same. Use of a firearm or other deadly or dangerous weapon elevates the crime to armed carjacking." *Smith v. State*, 907 So. 2d 292, 296 (¶17) (Miss. 2005). The record reflects that Brown's counsel did not concede anything that Brown had not already essentially admitted as a factual matter in his recorded statements

15

to the police that were played for the jury.

¶36.    As detailed above, Brown stated that on the night of the incident he and Livingston were "going to steal a vehicle and get somewhere." When they came upon Thomas in the Blackburn Motor Company lot, Brown began talking with Thomas as Thomas was sitting in his Honda with the driver's side door open. According to Brown, Livingston jumped in the passenger seat of the Honda, shot Thomas, Thomas fell on Brown, Brown pulled Thomas out of the car, and Brown got in the Honda's driver's seat. Brown and Livingston left the Blackburn Motor Company lot, and Brown drove the whole time to New Mexico.

¶37.    Further, as the record reflects, although Brown repeatedly denied that he had shot Thomas before confessing, Brown never denied his part in the carjacking, as reflected in the following excerpt from the trial transcript:

> Mr. Brown:    I didn't—I didn't shoot him. I didn't do none of that . . . . I still—I still got in the car. I'm not saying I'm not guilty of anything.
>
> Lt. Kimble:    So who—who drove?
>
> Mr. Brown:    I did.
>
> Lt. Kimble:    You got in the driver's seat?
>
> Mr. Brown:    I did. I'm not saying I'm not guilty of anything.

¶38.    As the precedent discussed above reflects, a decision to concede guilt on a less serious offense "where conviction seems likely," *Williams*, 791 So. 2d at 899 (¶13), in an effort to achieve acquittal on the more serious offense, is a matter of trial strategy. *Schrotz*, 179 So. 3d at 1207 (¶17); *Williams*, 791 So. 2d at 899 (¶13); *see also Faraga*, 514 So. 2d at 308-09.

16

Based on these authorities, we deny Brown's ineffective-assistance claim without prejudice to his right to pursue post-conviction relief as to this claimed error. The record contains no information regarding defense counsel's strategy on this issue, and thus this issue is more appropriately considered upon petition for post-conviction relief.

## II. Issuance of a Cautionary Instruction Regarding the Jury's Use of Transcripts While Recorded Statements are Played

¶39. The recordings of Brown's March 16 and March 22 interviews were admitted into evidence at trial and edited to remove reference to Brown's prior bad acts in accordance with the trial court's order granting defense counsel's motion in limine on that issue. The jury was given redacted transcripts of these recordings in order to follow along with them while they were being played. Brown asserts that his case should be reversed and remanded for a new trial because the trial court erred when it did not, sua sponte, instruct the jury that the recordings, and not the transcripts, were the primary evidence of Brown's statements. Alternatively, Brown asserts that reversal and remand for a new trial is warranted because his lawyer's failure to request such an instruction constitutes ineffective assistance of counsel. For the reasons discussed below, we find no merit in Brown's first contention, and we deny Brown's ineffective-assistance-of-counsel claim without prejudice to his right to seek post-conviction relief on this claimed error.

¶40. Regarding Brown's first argument, precedent reflects that a trial court will not be held in error for failing to issue a cautionary instruction of this nature where no such instruction is requested. *Fulgham v. State*, 46 So. 3d 396, 398-99 (¶¶8-15) (Miss. Ct. App. 2010); *Broadhead v. State*, 981 So. 2d 320, 329 (¶31) (Miss. Ct. App. 2007). Relying on the

rationale announced in *United States v. Onori*, 535 F.2d 938, 946-49 (5th Cir. 1976)—"that

defendants must request a transcript-based cautionary instruction"—this Court in *Fulgham*,

46 So. 3d at 399 (¶15), found that although it is "certainly best practice for trial courts to

fashion appropriate cautionary instructions[] when admitting recordings and purported

transcripts . . . we find the burden falls on the trial counsel to request the limiting

instruction." Because Fulgham failed "to seek a cautioning instruction, [the Court found] no

error in admission of the transcript." *Id.*

¶41.    In *Fulgham*, although not directly applying Mississippi Rule of Evidence 105 to the

issue before it, the Court recognized that *Onori*'s rationale "also comports with our own

evidentiary rules. [Rule 105] instructs: 'When evidence which is admissible . . . for one

purpose but not admissible . . . for another purpose is admitted, the court, *upon request*, shall

restrict the evidence to its proper scope and instruct the jury accordingly.'" 46 So. 3d at 399

(¶14) (quoting M.R.E. 105).

¶42.    We observe that amended Rule 105 became effective on July 1, 2015, prior to

Brown's March 2018 trial. Amended Rule 105 eliminates the language that the court, "upon

request," should issue a limiting instruction. M.R.E. 105. Rule 105 now provides: "If the

court admits evidence that is admissible against a party or for a purpose—but not against

another party or for another purpose—the court, *unless expressly waived or rebutted*, shall

restrict the evidence to its proper scope [and] contemporaneously instruct the jury

accordingly. . . ." M.R.E. 105 (emphasis added to reflect amendment).

¶43.    Elimination of the "upon request" language in Rule 105 does not change our analysis.

First, Rule 105 applies to "evidence that is admissible against a party or for a purpose—but not against another party or for another purpose"—not to the issuance of a transcript-based cautionary instruction. Rule 105 was merely referenced by analogy in *Fulgham*, it was not specifically applied in that context. 46 So. 3d at 399 (¶14).

¶44. Second, even if Rule 105 applied in assessing a court's responsibility for issuing a cautionary instruction about the jury's use of transcripts, this Court's discussion in *Curry v. State*, 202 So. 3d 294, 299 (¶16) (Miss. Ct. App. 2016), shows that reversal is not warranted based upon the trial court's failure to issue such an instruction, sua sponte, in this case. In *Curry*, this Court rejected the defendant's assertion that under amended Rule 105 the trial court should have, sua sponte, given a limiting instruction with respect to evidence admitted for a particular purpose under Rule 404(b). *Id.* The Court observed that "even as amended, Rule 105 only requires the judge to offer a limiting instruction, which the defendant is free to 'waive.'" *Id.* (citing M.R.E. 105). Recognizing that defense counsel may not have requested a limiting instruction as part of counsel's trial strategy, the Court found that reversal would only be appropriate if we found that "the absence of a limiting instruction deprived [the defendant] of a fair trial." *Id.* at 299 (¶16); *Horton v. State*, 253 So. 3d 334, 342 (¶¶23-24) (Miss. Ct. App. 2018); *Giles v. State*, No. 2018-KA-01222-COA, 2019 WL 2590861, at *5 (¶¶18-19) (Miss. Ct. App. June 25, 2019).

¶45. In this case, Brown makes no argument at all that he was deprived of a fair trial because the trial court did not issue a transcript-based cautionary instruction. Nor do we find any indication in the record that the absence of such a cautionary instruction deprived him

19

of a fair trial. We find that Brown's assertion that the trial court erred in failing to issue a cautionary instruction, sua sponte, is without merit. *See, e.g.*, *Brooks v. State*, 72 So. 3d 552, 555 (¶6) (Miss. Ct. App. 2011) (rejecting defendant's contentions where he failed to support them with record evidence and authorities pursuant to Mississippi Rule of Appellate Procedure 28); M.R.A.P. 28(a)(7) (The argument portion of Appellant's brief "shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.").

¶46. Brown's alternative argument is that his counsel rendered ineffective assistance because he did not request a cautionary instruction regarding the transcripts. Brown cites no authority for the proposition that his counsel's failure to do so constitutes ineffective assistance under the standard set forth in *Strickland v. Washington*, 466 U.S. at 687, addressed above. Indeed, just as he failed to do in the context of the trial court's purported responsibility to issue, sua sponte, such an instruction, Brown offers no argument at all that his lawyer's purported "deficient performance" in this regard prejudiced Brown's defense and thus deprived him of a fair trial, as required under *Strickland v. Washington*'s second prong. *Id.*

¶47. Further, as the authorities discussed above reflect, the decision whether to seek a limiting or cautionary instruction is a matter of trial strategy. *Curry*, 202 So. 3d at 299 (¶16); *Horton*, 253 So. 3d at 342 (¶¶23-24); *Giles*, No. 2018-KA-01222-COA, 2019 WL 2590861, at *5 (¶¶18-19). The record reflects that in this case the recordings were difficult to understand, defense counsel had already ensured that Brown's prior-bad-acts had been

redacted from the transcripts, and a full understanding of Brown's coerced confession defense required that the jury understand what was being said in each of Brown's statements. As such, it is certainly plausible that Brown's counsel had considered seeking a cautionary instruction, but believed that it may be confusing to the jurors, or that it would have been detrimental to his overall trial strategy in some other way.

¶48.    Such matters, however, are beyond the contents and face of the record.  We find that resolution of this issue is better left to be assessed on a complete record.  Precedent reflects that on direct appeal, we will deny relief in those matters "where the record cannot support an ineffective assistance of counsel claim . . . [and we will] preserv[e] the defendant's right to argue the same issue through a petition for post-conviction relief." *Johnson v. State*, 196 So. 3d 973, 975 (¶8) (Miss. Ct. App. 2015) (quoting *McClendon v. State*, 152 So. 3d 1189, 1192 (¶12) (Miss. Ct. App. 2014)).

¶49.    **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**